[No. 3411.]

### EMPIRE RANCH AND CATTLE CO. v. HOWELL.

1. APPEALS—*Harmless Error.* Errors not affecting the substantial rights of the complaining party will not be regarded, e. g., where, in a bill to quiet title, the plaintiff avers title in fee and proves only an equity, defendant showing no title.

2. TAX TITLES—*Deed Construed.* A treasurer's deed recited that the treasurer, "at a tax sale publicly held on the 19th day of October," exposed to sale the lands described therein "in substantial conformity with the statute;" that no bid was offered for any of the lands, that the treasurer became satisfied that no sale of the lands could be effected and "did bid off at said sale," in the name of the county, all the said lands—a line ·in the printed form, reciting that the treasurer passed the land for the time, and reoffered it on the last day of the· sale, being stricken out. Held to show conclusively that the land was bid in by the county upon the first day upon which it was offered and that the deed was void upon its face.

A deed reciting that the treasurer on the 31st day of October, "at an adjourned sale begun and held on the 5th day of October," exposed to sale, in conformity with the statute, the lands described therein, that no bid was offered for any of the lands or any portion thereof, "exposed to sale and remaining unsold at said sale," and that * * * the treasurer "having passed such real property for the time, did offer and reoffer for sale from day to day until the 31st day of October, being the last day of the sale." Held that the deed either failed to show when the lands were first offered, or that they ·were not offered at all until October 31st, and the deed in either case was void on its face.

3. —— *Limitations.* The seven year limitation (Rev. Stat., sec. 4090) is not available to one claiming under a tax deed not of record for the full term of seven years, at a time when an action for the recovery of the lands is instituted.

4. —— *Color of Title—Payment of Taxes.* One asserting title to unoccupied lands, under the statute (Rev. Stat. 1908, sec. 4090) must show (1) Color of title obtained in good faith, (2) Payment of taxes by the holder of such color of title for the full period of seven years; and such color of title and payment of taxes must exist, concurrently without interruption, through the full statutory period. Taxes which are already due and payable when color of title is acquired, and which are afterwards paid, are not to be counted as one of the payments required by the statute.

5. STATUTES—*Construed.* Secs. 4089, 4090, Rev. Stat. 1908, are *in pari materia*, and must be construed together.

6. CASES OVERRULED, *Explained, or Distinguished.* Stephens v. Clay, 17 Colo., 489, explained.

7. MORTGAGOR AND MORTGAGEE—*Estate of Mortgagee.* The legal title of the mortgagee is recognized only for the benefit of the holder of the mortgage debt. As against all other persons the mortgagor has the legal estate.

One who conveys by deed of trust is a mortgagor within the rule.

8. APPEAL—*Judgment.* A decree vacating tax deeds containing several parcels of land modified so as to limit its effect in this particular to the lands described in the complaint.

*Appeal from Washington District Court.* HON. H. P. BURKE, Judge.

Mr. R. H. GILMORE, for appellant.

Mr. JOHN F. MAIL, for appellee.

CUNNINGHAM, Judge.

Appellee, as plaintiff below, brought his action in ejectment in the district court, alleging that he was the owner in fee simple and entitled to the immediate possession of some twenty quarter sections of land situated in said county. Plaintiff further alleged "that the defendant wrongfully withholds the possession of the said premises from this plaintiff,

and wrongfully and unlawfully continues to exercise acts of ownership thereover, and claims to own the same.'' By the prayer of his complaint plaintiff asked that he be adjudged the owner in fee of the said land, and entitled to the immediate possession thereof; that he be let into possession of said lands as against the defendant, and all persons claiming or to claim by, from or under it; for his costs and all other proper relief. The defendant company answered, denying each and every allegation of the complaint, and for a second defense admitted that it was in possession of the several tracts of land; alleged that it was the owner thereof under deeds severally conveying to the defendant the said several tracts of land; that the defendant, having claim and color of title adverse to the plaintiff, made in good faith, had paid the taxes thereon for seven successive years; that no other person or persons had paid any taxes on said land during the aforesaid period; that the land was vacant and unoccupied during all of said period. In its prayer the defendant demanded judgment that it is the owner of the said several tracts of land and entitled to the possession thereof.

1. Plaintiff's claim of title to a large number of the tracts of land involved was based upon a trustee's deed executed by a trustee named in a second deed of trust, the owner of said land having given two trust deeds at or about the same time on these tracts of land. There was evidence introduced on the trial showing that the plaintiff was the owner and in possession of all of the notes which the first trust deeds were given to secure, and that he had the same in court, together with the trust deeds securing the same. Appellant contends that the second trust

deeds being given subject to the trust deeds preceding them could convey nothing more than an equity of redemption, since the first trust deeds conveyed the whole legal title; hence, it contends that the trustee's deeds resulting from the foreclosure of the second trust deeds could convey no more than an equity of redemption, and therefore, the legal title of the land was not in the plaintiff, and his action must fail since he alleged in his complaint that he was the owner in fee simple. In other words, appellant contends that there was a fatal variance between the pleadings and the proof. It is not seriously contended by defendant that the plaintiff might not have recovered in an action of this sort, had he plead and proven an equitable title. But, inasmuch as he plead fee simple title and proved equitable ownership only, defendant insists he must go out of court. In this connection the defendant complains also of the findings and decree of the court adjudging the plaintiff to be the owner in fee simple of the land. It is further contended by the appellant that nothing but possession was involved in this case, and the decree ought not to have gone beyond the determination of that single question. Both by the prayer of the complaint, and the prayer of the answer, it will be seen that each of the parties to the action sought to have the question of title determined by the court. The defendant's title was predicated entirely upon tax deeds. If these tax deeds were sufficient, they constituted paramount title, and the case must be reversed; if they were void, then the decree of the court adjudging the plaintiff to be the owner in fee simple of the land is not prejudicial to appellant, even granting that the language of the decree goes

beyond what the evidence warrants, and it cannot bind or affect one not a party to the action. Should a judgment, if otherwise just and regular, be set aside because the plaintiff alleged title in fee, and on the trial proved equitable title? The answer must, we apprehend, depend upon the nature of the action and the substantial rights of the defendant. The legislative and judicial branches of our state government have frequently declared against reversing the decrees of trial courts for errors not affecting the substantial rights of the losing party. The following are a few of the many cases so holding: *Salazar v. Taylor,* 18 Colo. 547; *Miller v. Williams,* 27 Colo. 39; *Doland v. Grand Valley Ir. Co.,* 28 Colo. 154; *Geiger v. Kiser,* 47 Colo. 301; *Coe v. Waters,* 7 Colo. App. 207-9; *Burchinell v. Koon,* 8 Colo. App. 470; *Roberts v. Handasyde,* 21 Colo. App. 450; 122 Pac. 60; *Denver City Tram. Co. v. Armstrong,* No. 3302; 21 C. A. 640.

In the case of *Coe v. Waters, supra,* in an able opinion on petition for rehearing, the late Judge Bissell, who wrote the opinion, speaking of variance, uses this language:

"Doubtless if the defendant had been surprised by the testimony and a totally different case had been made from that which he was called upon to answer, he would have been entitled to a continuance. He might likewise, perhaps, in the present instance, have compelled an amendment to the complaint so as to have presented a legally accurate statement of the plaintiff's action. Taking no steps in either one of these directions, we do not regard the question of variance as so saved in the record as to call for a specific judgment respecting it. While we concede

the complaint is not so drafted as to present with technical accuracy the cause of action, it was according to the verdict of the jury sustained by the proof. It did contain all the allegations requisite to the plaintiff's recovery.''

2.   The appellant based its claim of title to the land in question on two certain correction tax deeds issued by the treasurer of Washington County. There are certain serious, if not fatal, defects in the original tax deeds, and it is reasonable to suppose that the two correction deeds were issued for the purpose of meeting or correcting these defects. It is not necessary in the view we take of the correction deeds to consider the defects in the original deeds. Nor is it necessary for us to determine whether the treasurer of Washington County was authorized to issue said correction deeds. The first correction deed relied upon (being Exhibit 3) contains, among other things, the following recitations, omitting unnecessary portions:

''Know all men by these presents, that whereas the following described real property (here describing a portion of the property involved in this action) situate in the county of Washington, state of Colorado, was subject to taxes for the year A. D. 1895 * * and whereas the treasurer of said county did by virtue of the authority vested in him by law, at a tax sale, the sale publicly held on the 19th day of October, A. D. 1896, severally expose at public sale at the office of the county treasurer in the county aforesaid, in substantial conformity with the requirements of the statute in such case made and provided, each tract of said property for the payment of taxes, etc.   *   *   *   and whereas no bid

was made or offered by any person at said sale for any of the land . * * * offered, to sale and remaining unsold at said sale, and particularly for the said above described real property, or any part of it, and said treas— he became satisfied that no more sale of any property and particularly the real property herein specifically described, so offered, could be effected at public sale, thereupon said treasurer did bid off at said sale for and in the name of said county of Washington, all the lands," etc.

There is a portion of a line appearing in the exhibit offered as a copy of said correction deed, reading as follows: "having passed such real property over for the time, did re-offer it until on the last day of the sale." which has been erased, or through which a line is drawn. From the above it conclusively appears that the land in question was bid in by the county on the first day that the same was offered for sale. It follows, therefore, that this correction deed was void on its face, and under repeated rulings of our supreme court.

The second correction deed relied on (being exhibit 20) embraced the remaining portion of the land involved in this action. This deed contained the following recitals:

"Know all men by these presents, that whereas, the following described real property, to wit: (describing a certain portion of the land involved in this action) were subject to taxation for the year A. D. 1895 in the said former county of Arapahoe, and whereas the taxes separately assessed upon said real estate for the year aforesaid remained due and unpaid. at the date of the sale hereinafter named; and whereas the treasurer of said county did on the 31st

day of October, A. D. 1896, by virtue of the author-
ity vested in him by law, at an adjourned sale, the
sale begun and publicly held on the 5th day of Oc-
tober, 1896, severally expose to public sale  *   *   *
in substantial conformity with the requirements of
the statute   *   *   *   the said several parcels of
real property above described   *   *   *   and where-
as, no bid was made or offered by any person at said
sale for any of the land or portion thereof offered
and exposed to sale and remaining unsold at said
sale   *   *   *   the treasurer having passed such
real property for the time, did offer and re-offer for
sale from day to day until the 31st day of October,
being the last day of the sale,'' when, as appears,
the treasurer bid the same off for the county.  It is
clear that this property was not offered for sale until
the 31st day of October, whereas the sale, it appears,
had begun on the 5th day of October.  The deed says
that ''the treasurer of said county did on the 31st day
of October, A. D. 1896,'' do certain things.  And
those certain things appear from the recitals follow-
ing to be to expose or offer the property for sale and
striking it off to the county.  If the treasurer had
also exposed or offered it for sale on any day be-
tween the 5th day of October, when the sale was be-
gun, and the 31st day of October, the day when the
sale was made, it would have so recited in the deed.
See *Bryant v. Miller*, 48 Colo. 194.

It is true that the deed recites that the treasurer
passed the property and did offer and re-offer it for
sale from day to day until the 31st day of October,
but if he offered it for the first time on the 31st day
of October, he could not have passed it from day to
day, and this recitation is manifestly untrue.  If he

offered it on days previous to October 31st, it would have been an easy matter to have recited on what days it was so offered. It is said in *Charlton v. Toomey*, 7 Colo. App. 304, that every preliminary step required to divest the owner of title must affirmatively appear in the recitals of the tax deed to have been regularly taken as required by law. It is also said in the same case that when the property has been reached òn the tax sale: "It must be offered, and if no outside bid is made it must be offered on the next, and each succeeding day until the close of the sale. * * * After being first offered it must be continuously offered from day to day until the sale is concluded; all efforts to affect a sale must be exhausted; and the treasurer can exercise no previous discretion; and the county can only become a purchaser of the entire tract in default of an outside bidder, after an opportunity had been offered each day."

While, as we have said before, the deed does recite that the treasurer "did offer and re-offer it (meaning the land) for sale from day to day until the 31st day of October, being the last day of the sale," it nowhere appears when he first offered the land, or on what day or days he offered it, unless, as we construe the recitals of the deed, it was offered on the 31st day of October, being the last day of the sale, and the day the land was sold. In other words, the land was offered, for the first time, and sold, on October 31st, the last day of the sale, or else we have no information whatever as to how many times the land was offered for sale or on what days it had been previously offered for sale. Hence, we have no basis for determining whether the treasurer acted arbi-

trarily and whether his satisfaction that no more bids could be obtained for the land was reasonable or otherwise. In the *Charlton-Toomey* case, *supra,* it is said: ''It is true that the section contains the following: 'Or until the treasurer shall become satisfied that no more sale can be affected'. But this must be so construed as to harmonize with the balance of the section, otherwise it would invest the treasurer with an arbitrary discretion that he might exercise at any time in contravention of the balance of the section.''

This deed is substantially, if not precisely, the same in form as the one before us in the case of *Empire Ranch & Cattle Co. v. Howell,* No. 3406, decided by this court recently, and which we held to be void on its face.

We think clearly that under the rule laid down in *Bryant v. Miller, supra,* and *Charlton v. Toomey, supra,* this deed is void on its face for the reasons already pointed out. Hence, it is not necessary to consider other alleged defects therein.

3. Appellant further insists that even if the tax deeds under which its claim of title to the land in controversy is made be void on their face, still it has title by virtue of compliance with Section 4090 R. S. This contention is ably and elaborately presented by counsel for appellants in their briefs, certain phases of the statute of limitations being discussed which we do not find it necessary to consider or pass upon. The record shows that the tax deeds upon which appellant relies had not been of record seven years at the time appellee instituted his action. In *Sayre v. Sage,* 47 Colo. 568, our supreme court ruled:

"As it appears the defendant was not in possession of the lode mining claim in controversy for the period of seven years between the date his tax deed was filed for record and the commencement of the action against him," [and such is the situation in the case under consideration] "and that five years had not elapsed after his tax deed was recorded before plaintiff instituted the suit * * * neither of the sections relating to limitations was available as a defense."

In the *Sayre* case all the various statutes of limitation applicable to real property had been plead and relied upon by the defendant. Therefore, under the authority of the *Sayre* case, assuming, but not deciding, that the seven-year statute of limitations was properly plead by the defendant in the case at bar, still it was not available as a defense.

The judgment of the trial court is affirmed.

*Affirmed.*

---

Supplemental opinion filed Oct. 14, 1912.

## ON PETITION FOR REHEARING.

CUNNINGHAM, Judge.

In its petition on rehearing appellant vigorously insists upon the contention made in its behalf in the original brief that its title had been perfected under and by virtue of sec. 4090 R. S. In the original opinion we ruled against this contention on the authority of *Sayre v. Sage,* 47 Colo. 568. Counsel for appellant, in his brief on rehearing, insists that the Sayre case is not authority, contending that that case turned upon original sec. 6 of the Act of 1893, or

sec. 4089 R. S.; instead of original sec. 7, Sec. 4090 R. S. We still are of opinion that the rule in the Sayre case is applicable and controlling, but inasmuch as the question has been presented on oral argument in cases later to be decided and involving large tracts of land, we feel justified in presenting in a supplemental opinion our views somewhat fully on the points raised and discussed by counsel for appellant in his original brief and in his brief on motion for rehearing in this case and in oral arguments in other cases later to be determined.

The defendant, The Empire Ranch and Cattle Company, on January 23rd, 1901, took an assignment from the county of Washington of a tax certificate to certain lands, which certificate had theretofore and some time during October, 1896, been issued to the county by the county treasurer upon the sale of lands for delinquent taxes for the year 1895. This tax certificate having been assigned to it by the county clerk (apparently in virtue of a resolution adopted by the board of county commissioners who were attempting to proceed under sec. 3926i M. A. S., (Vol. 3), the defendant presented the same to the county treasurer on the 18th day of February, 1901, and received a tax deed for the land embraced in the certificate, and the deed was recorded on February 19, 1901. We thus have in the record the date of the assignment of the tax certificate and the name of the officer assigning the same, viz., the county clerk. This officer appears to have assigned the certificate more than three years after the date of its issue. The resolution of the board of county commissioners, which appellant introduced in evidence, nowhere authorizes or empowers the county clerk to

make this assignment, at least not in terms, as far as we can gather from the abstract or bill of exceptions, and it may well be doubted whether under the ruling in *Monson v. Gillette,* 51 Colo. 147, 116 Pac. 1055, and *Lambert v. Murray,* 52 Colo. 156; 120 Pac. 415-20, the attempted assignment of the certificate of purchase by the county clerk was not fatally defective, and therefore and for this additional reason the tax deed void. At the time the aforesaid tax deed was taken by defendant and put of record, viz., February 19, 1901, the taxes for the year 1900 on the land included in the certificate which the county had attempted to assign appellant were then past due. Promptly after recording its deed, the defendant paid the taxes for the year 1900 on the land included in the deed and the aforesaid certificate of purchase. Thereafter and before this suit was instituted, defendant paid the taxes for the years 1901 to 1906 inclusive, each of said payments being made in apt time. The suit was begun on July 10, 1907. Thereafter and pending the suit, the defendant also paid the taxes for the year 1907, paying them in 1908.

1. We may not have stated the facts with absolute accuracy, but we think the statement, even if inaccurate, is not at all prejudicial to either party, and serves the purpose of bringing clearly into view the question presented for our determination, viz., can the first payment made by the defendant after it had recorded its tax deed, that is, the taxes for the year 1900, (which were paid in February, 1901, after the recording of the deed) be considered and counted as one of the seven payments provided for in Sec. 4090 R. S. This section reads as follows: "Whenever a person having color of title, made in

good faith, to vacant and unoccupied lands, shall pay all taxes legally assessed thereon for seven succes-sive years, he or she shall be deeméd and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title. All persons holding under such taxpayer, by purchase, devise or descent, be-fore said seven years shall have expired, and who shall continue to pay the taxes for the aforesaid, shall be entitled to the benefit of this section. Pro-vided, however, if any person, having a better paper title to said vacant and unoccupied land, shall during the said term of seven years, pay the taxes assessed on said land for any or more years during the said term of seven years, then and in that case such per-son seeking title under claim of taxes paid, his heirs and assigns, shall not be entitled to the benefit of this section." (L. '93, p. 328, § 7.)

Defendant's contention, which we shall state substantially in the language employed by its coun-sel in his original brief, is that under said Sec. 4090, *"the payment of taxes* is the leading feature, and the statute says *whenever* that is done seven suc-cessive times by a party 'having color of title' then the bar of the statute is complete.

Referring to the preceding section, 4089, which applies to the payment of taxes for seven years by one in actual possession under claim and color of title made in good faith, and which we need not quote, counsel for the defendant says in his brief:

"The idea of a period, or term, pervades the first section. The idea of repetition of the payment of taxes assessed is prominent in the other. In the first section the bar of the statute is complete at the

end of the period when 'possession *and* payment' shall have continued *concurrently* seven years, while, in the second section (4090 here under consideration) the bar is complete *whenever* the seventh payment is made. * * * In the second section the payments are several distinct entities producing results 'whenever' the last one is completed.''

And further, counsel says: ''Being vacant and unoccupied, the payment of taxes was the only visible assertion of ownership. Seven successive times in that number of years the party having color of title by the payment of taxes thereon, notified the previous owner in a manner which could be ascertained, that he claimed that land,'' meaning the land in controversy.

We find this further statement in counsel's brief: ''The legislature entirely omitted in the second section all references to possession, or any period of time.''

We have attempted to state fully the contention of counsel for the defendant, using, as nearly as practicable, his own language, and we shall now proceed to a consideration of the same.

As we have seen, defendant's tax deed was recorded in February, 1901. This action was begun on July 10, 1907, hence, at the time of the institution of this action, defendant had had color of title for considerably less than seven years. We cannot accept counsel's view of sec. 4090, for, as we read it, the legislature did not omit all references to ''any period of time''. In the last sentence of the section it is provided that ''if any person having a better paper title to said vacant and unoccupied land *shall during the said term of seven years,* pay the taxes

assessed on said land for any one or more years *during the said term of seven years,"* the running of the statute is thereby arrested. And in the preceding sentence it is said: "All persons holding under such taxpayer, by purchase, devise or descent, *before said seven years shall have expired,* and who shall continue to pay the taxes as aforesaid so as to complete the payment of taxes for the aforesaid shall be entitled to the benefit of this section." Thus, at least three times, the legislature does make reference to a period of time, and the period of time is always seven years. We think that sections 4089 and 4090 are *in pari materia,* and must be read and construed together. The only substantial difference between the two sections is that in 4089 possession is required, while in 4090 the land must be vacant and unoccupied. But whether we are correct in this or not, certainly the last two sentences of sec. 4090 must be construed in connection with the first sentence, on which defendant bases its entire argument that it may complete the bar of the statute by paying the taxes for seven successive years, no matter when such payments be made. It is not necessary for us to, and we do not, decide that the seven payments of taxes provided for in sec. 4090 must be payments of taxes levied or assessed after the color of title has been obtained. All we determine is that taxes that have been assessed and which are due and payable at the time the color of title is taken cannot thereafter be paid and counted as one of the seven payments required by the statute, and that seven full years must elapse between the first payment of taxes on vacant and unoccupied land and the institution of the suit to recover the land. In other words, to

establish title by limitations, under section 4090 R. S., three things are necessary: First, color of title obtained in good faith; second, payment of taxes for the full period of seven years by the holder of such color of title, or by someone acting for him; third, these two things must exist concurrently without interruption, and must continue throughout the seven years. *Goss v. Wheeler*, 229 Ill. 272.

That seven full years must elapse between the date of the first payment of taxes and the commencement of the suit is sustained by a long line of decisions made by the supreme court of Illinois, from which we borrowed our statute. *Knight v. Lawrence,* 19 Colo. 431.

The following Illinois cases were decided before 1893, the date of the enactment by our own legislature of Section 4090: *Stearns v. Gittings,* 23 Ill. 387; *Dickinson v. Breeden,* 30 Ill. 279; *Clark v. Lyon,* 45 Ill. 388; *McConnel v. Konepel,* 46 Ill. 519; *Lyman v. Smilie,* 87 Ill. 259; *Holbrook v. Debo,* 94 Ill. 327; *Iberg v. Webb,* 96 Ill. 415; *Smith v. Prall,* 133 Ill. 308.

Illinois has repeatedly, since 1893, the date of the adoption of our statute, reaffirmed her earlier rulings, but it is not necessary to cite all the later cases.

Washington, having a similar, if not an identical statute, in *Tremmel v. Mess,* 89 Pac. 842, follows the decisions in Illinois, as does also South Dakota, in *Bennett v. Moore,* 99 N. W. 855.

In the *Bennett* case, the South Dakota supreme court uses this language:

"The statute in effect provides for a forfeiture of the property of the former owner   *   *   *   and

should therefore be strictly construed.  It would seem essential that the party paying the taxes and claiming the benefit of the statute should have color of title in good faith during all of the ten years in which the taxes are being *assessed and paid, and that the two must exist together."*

The italics are ours.  The only distinction observable between the South Dakota statute and our own is that the period in South Dakota is ten years instead of seven.  See also *Sibley v. England* (Ark.), 11 S. W. 820; *Gaither v. Gage* (Ark.), 100 S. W. 80.

2.  On rehearing counsel for appellant again with much vigor renews his contention that no title passes by a second deed of trust given subject to a prior deed of trust, and that only a bare right to redeem is conveyed by a trustee's deed based on the foreclosure of such second deed of trust.  To support this contention much reliance is placed on *Stephens v. Clay,* 17 Colo. 489.  A casual reading of the opinion in the Stephens case discloses that Judge Helm, who wrote the same, made no distinction between the right to redeem, the equity of redemption and the *equitable title,* and specifically states that the equitable title remains in the trustor until divested by sale under foreclosure proceedings regularly brought.  Mr. Warvelle in his late work on ejectment, (1905, § 142) thus defines the relation of the mortgagor to the title of the land on which he has given a mortgage:

"Notwithstanding that by the common law the legal title and estate in the mortgaged lands passed to and became vested in the mortgagee upon the execution of the mortgage, the principle was early announced in the American cases, that as to all the

world, except the mortgagee, the freehold remained in the mortgagor in the same condition in which it was prior to the mortgage. Being thus clothed with all his rights as a freeholder, as to all persons other than the mortgagee or his assigns, it followed that he might maintain any action, for an injury to the inheritance or possession, and the mere fact that the legal title was in the mortgagee could not be urged as a defense. Where, as is generally the case, the mortgage is regarded as a mere lien, the right to recover possession from a stranger cannot be questioned, as this is one of the attributes of ownership and is an inseparable right of property.''

In the case of *Adams v. Shirk,* 117 Fed. 801-5, this language appears:

''The legal title of the mortgagee is recognized only for the benefit of the holder of the mortgage debt. Against all other persons the mortgagor is the legal owner of the estate.''

See also *Lewis v. Hamilton,* 26 Colo. 263.

In this respect there appears to be no distinction between a trustor and a mortgagor. *McGovney v. Gwillim,* 16 Colo. App. 284-5; *Seaman v. Bisbee,* 163 Ill. 91.

It appears that several of the tax deeds offered in evidence by appellant described tracts of land not in any way involved in this suit. The judgment of the trial court declared all of the aforesaid deeds void and decreed their cancelation. The trial court was without authority to extend the effect of its decree beyond the lands described in the complaint, and to the extent it attempted so to do, its decree is hereby modified.

Discovering no reason other than that last above

stated for modifying the original opinion handed down in this case, the rehearing is denied, and the decree of the trial court as modified will stand affirmed.

*Rehearing denied.*

Decided July 8, A. D. 1912.  Rehearing denied October 14, A. D. 1912.

Morgan, Judge, not participating.