[No. 8221.]

## TOWNER V. SCHAFFNIT.

LIMITATIONS—*Color of Title—Payment of Taxes.* Bill to Quiet Title. Both parties claimed under The Denver Land & Security Company,—plaintiff under deed of trust executed by that company, and a sale and conveyance of the lands under the powers of the deed of trust, the trustee's deed bearing date May 4, 1899; the defendant under a conveyance by warranty deed from one who derived title by conveyance of the same company, subsequent to the execution of the deed of trust. Plaintiff's action was instituted

June 13th, A. D. 1911. Defendant had paid taxes continuously for more than seven successive years after the acquisition of her title, and prior to the institution of the action. The court below found that defendant's title was acquired in good faith, and that the lands had always been vacant. It was contended for plaintiff that because defendant's title came from the same source as that of plaintiff, and by a conveyance subsequent in date to the deed of trust under which plaintiff claimed, defendant's claim was not to be regarded as hostile to that of plaintiff, and that she was not entitled to the benefit of the seven years' limitation. (Rev. Stat. sec. 4090.) This contention was rejected. Decree quieting title in defendant affirmed. (246, 247.)

*Error to Denver District Court.* HON. JAMES H. TELLER, Judge.

Mr. ISHAM R. HOWZE, for plaintiff in error.

Mr. ALBERT T. ORAHOOD, for defendant in error.

HILL, J., delivered the opinion of the court.

This action was instituted by the plaintiff in error to quiet his alleged title to four lots in Berkeley. The complaint was in the usual form. It alleges ownership in fee possession, and that the defendant claims an adverse interest therein, etc. Trial was to the court, which found the issues in favor of the defendant, and entered decree quieting her title to the lots, as against the plaintiff, who brings the case here for review.

The defendant plead four separate defenses; if any one was good, and is supported by competent testimony, the judgment should be affirmed. The substance of the fourth is, that the premises are and were vacant and unoccupied land; that the defendant acquired and is now holding it as owner in fee under claim and color of title made in good faith by warranty deed from one Jonas W. Benton, bearing date February 1, 1893, duly recorded, etc., and that she has paid, during all of said time, all taxes and assessments of every kind legally assessed against it for a period of more than seven years immediately prior to the commencement of this action. This suit was instituted June 13, 1911. The

testimony discloses, that the defendant, in good faith, made purchase of this property from Jonas W. Benton, who gave to her a warranty deed therefor bearing date February 1, 1893, acknowledged February 7th and recorded February 20th, following; that this deed was in the usual form and contains no reservations or exceptions; that the defendant paid $700 for the lots and has paid all taxes assessed against them for the years 1894 to 1913, inclusive, with the exceptions of the first half of the taxes for the year 1898.

Eliminating the first half of the 1898 taxes and the four years preceding paid by her, it still leaves the taxes for thirteen consecutive years paid by her under claim of title, evidenced by warranty deed of record. The testimony is conflicting as to the lots being vacant and unoccupied from 1908 to 1911. The plaintiff's testimony is to the effect, that he purchased them in April, 1908, and secured his deed November 1st, following, which was recorded February 3, 1909; that he had some vegetables planted on them in 1908, but did nothing in 1909, but that a neighbor did; that he put part in potatoes in 1910 and paid for cutting the weeds in 1911. There was no testimony that he ever had them enclosed and he admits that he had never paid any taxes on them up to the time of the institution of this action. The defendant's testimony is to the effect that at the time of her purchase in 1893, her husband, as her agent, went upon the lots and took possession; that they intended to build upon them; that they were then vacant and unoccupied, and have been ever since; that some one planted some vegetables on them one year, not all over but just a spot here and there; that this was ten to fifteen years prior to 1913; that the defendant or her agent did not know who did it, but were told it was some one in the neighborhood; that it was done without the defendant's consent; that as soon as the defendant learned that the plaintiff made claim to the lots (which was shortly before the institution of the suit) her husband went to him and asked him by what

right, etc., and asserted her title to them; that the defendant talked to his wife, and told her that she owned the lots, also to a Mr. Walker, who it appears was an officer or agent of the corporation that conveyed them to the plaintiff; that he, Walker, wanted to settle the matter but that the defendant through her husband, declined and informed him that the property was theirs, etc.

Section 4090, R. S. 1908, in part, reads:

"Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title. * * * *Provided*, however, If any person, having a better paper title to said vacant and unoccupied land, shall during the said term of seven years, pay the taxes assessed on said land for any one or more years during the said term of seven years, then and in that case such person seeking title under claim of taxes paid, his heirs and assigns, shall not be entitled to the benefit of this section."

When the testimony is considered as a whole, it is sufficient to support the court's findings which sustain the defendant's title under this section so far as color of title, the payment of taxes for seven successive years, and the vacancy of the property during this period is concerned. When these matters take place, if performed in good faith, the provisions of the statute are unconditional. It states that he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title.— *Knight v. Lawrence*, 19 Colo. 425, 36 Pac. 242; *Schlageter v. Gude*, 30 Colo. 310, 70 Pac. 428; *Empire Co. v. Howell*, 22 Colo. App. 584, 126 Pac. 1096; *Webber v. Wannemaker*, 39 Colo. 425, 89 Pac. 780.

While conceding the statements last made to be the

proper meaning of the statute, counsel urge that the color of title intended must, of necessity, be hostile to the real owner the same as hostility of possession under section 4089, Rev. Stats., and it is contended that such was not the case here and in no event could be prior to May 4, 1899, for the following reasons: The record discloses, that The Denver Land and Security Company was the common source of title; that upon the 16th day of February, 1888, it executed its trust deed upon this and a large amount of other property to secure the payment to one Walker of a large amount of money; that this deed of trust was foreclosed and a large portion of the property, including the lots in question, sold and a trustee's deed issued therefor upon May 4, 1899, recorded May 5th; that the plaintiff deraigns title through this trust deed; that the defendant deraigns title through The Denver Land and Security Company, whose warranty deed to these lots was executed subsequent to the execution and recording of this deed of trust, and which makes it subject thereto, which it is alleged was a valid lien thereon; to put it in another way, that the title to the property stood in the name of the trustees at the time of the execution of the security company's warranty deed, as well as at the date of the Benton deed to the defendant in February, 1893, for which reason the defendant's deed was not a hostile claim to the source of title under which the plaintiff acquired the property; that the fact that the indebtedness secured by the deed of trust might be defeated by the statute of limitations did not make any difference, for the reason this court has heretofore held that this does not prevent the foreclosure of a trust deed containing a power of sale as this one did, hence, that the defendant's title was at no time hostile to that of the plaintiff and his grantors, or at least that such hostility did not commence until May 4th, 1899; that up to that time her claim of ownership must be presumed to be the equity of redemption only, subject to this deed of trust, and not in conflict with

it, hence, was not held in good faith as a hostile title, at least so long as it was subject to this deed of trust.

Accepting for the purposes of this case, but without deciding, that the plaintiff's claim of color of title in good faith was not hostile, and could not thus become until May 4th, 1899, when the trust deed was foreclosed and the trustee's deed placed of record, we are unable to see how it can change the conditions. We cannot agree that it was not a hostile title in good faith after the foreclosure. This suit was not instituted until June 13, 1911; at this time the defendant had paid all taxes for the years 1899 to 1911, inclusive, twelve years, having on July 24, 1899, paid the second half of the taxes for the year 1898, and thereafter paid them all as they became due up to February 26, 1913, when she paid the 1912 taxes, having on January 10, 1911, paid in full the taxes for the year 1910; hence, accepting the court's findings in favor of the defendant to include the property being vacant and unoccupied, as alleged in the answer, it discloses the payment of all taxes under color of title, etc., in good faith from May 4, 1899, to June 13, 1911, a period of over seven consecutive years, during which time all of these matters required by the statute transpired concurrently, for which reason it was proper that she be adjudged the owner according to the purport of her paper title. *Schlageter v. Gude, supra; Parker v. Betts,* 47 **Colo.** 428, 107 Pac. 816; Vol. 1, Cyc. 1105.

The judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GARRIGUES concur.