AETNA CASUALTY & SURETY COMPANY, Plaintiff–Appellant,

v.

CANAM STEEL CORPORATION, a Delaware corporation, and Richard Weingardt Consultants, Inc., a Colorado corporation, Defendants–Appellees.

No. 89CA0115.

Colorado Court of Appeals, Div. II.

March 29, 1990.

As Modified on Denial of Rehearing June 8, 1990.

Tilly & Graves, P.C., David D. Schlachter, W. Daniel Mahoney, Denver, for plaintiff-appellant.

Davis, Graham & Stubbs, William A. Bianco, David R. Hammond, Eric L. Wilson, Denver, for defendant-appellee Canam Steel Corp.

Knapp, Lee & York, Byrum C. Lee, Jr., Denver, for defendant-appellee Richard Weingardt Consultants, Inc.

Opinion by Judge MARQUEZ.

Plaintiff, Aetna Casualty & Surety Company, appeals from adverse summary judgments dismissing its claims against defendants, Canam Steel Corporation (Canam) and Richard Weingardt Consultants, Inc. (Weingardt). We reverse both judgments and remand for further proceedings.

University Hills Baptist Church entered into a contract with Maranatha Construction Company (general contractor) whereby the latter was to construct a sanctuary addition to the church. The general contract, essentially a standard American Institute of Architects (AIA) form, provided that the church and general contractor waived all rights against "subcontractors" and against the architect and his agents for "damages caused by fire or other perils to the extent covered by insurance...." The church also entered into a contract with an architect, and Weingardt served as the architect's project engineer.

The general contractor contracted to buy joists and joist girders from Midwestern Joists, Inc., Canam's predecessor. Under this agreement, Canam was to furnish certain specified materials and to deliver those materials f.o.b. jobsite. After substantial work on the construction of the sanctuary had been performed, the roof over the new church sanctuary collapsed during a snowstorm.

Aetna had issued a builders' risk policy to the church and alleged that it had paid costs exceeding $1,400,000 for the investigation and reconstruction of the sanctuary. Consequently, Aetna, as the alleged subrogee of the church, brought suit against Canam, claiming damages for negligence, breach of implied warranties, and defective product liability. It also joined Weingardt and asserted liability on the basis of negligence.

The trial court granted both Canam's motion for partial summary judgment and Weingardt's motion for summary judgment. The court concluded that, under the terms of the general contract, any claims the church had against Canam and Weingardt had been waived.

## I.

■ Aetna claims the trial court erred in concluding that Canam was a "subcontractor" as defined under the general contract and that therefore the church's waiver of claims did not inure to Canam's benefit. We agree with Aetna.

Under the general contract, the church waived all rights against "subcontractors." The contract expressly stated: "A Subcontractor is a person or entity who has a direct contract with the Contractor to perform any of the Work at the site." "The Work" was defined under the agreement to include "all materials and equipment incorporated or to be incorporated in such construction."

A fundamental rule of contract law is that the court should strive to ascertain and give effect to the mutual intent of the parties. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984). And, interpretation of a written contract is generally a question of law for the court. *Pepcol Manufacturing Co., supra.*

At issue here is whether Canam had a direct contract with the general contractor "to perform any of the Work at the site," *i.e.*, whether Canam is a "subcontractor" that would be afforded the benefit of the church's waiver.

Courts construing identical contract provisions have held that merely contracting to deliver material to the jobsite does not make a party a "subcontractor." *See Baldwin Co. v. Weyland Machine Shop, Inc.*, 14 Ark.App. 118, 685 S.W.2d 537 (1985) (party was a supplier and not a "subcontractor" since it merely delivered goods for work to be performed by another); *Socar, Inc. v. St. Paul Fire & Marine Insurance Co.*, 288 S.C. 287, 341 S.E.2d 822 (S.C.App.1986) (party that did "not perform any work at the site" was not a subcontractor; *but see Robintech, Inc. v. White & McNeil Excavating, Inc.*, 218 Mont. 404, 709 P.2d 631 (1985).

While Canam's predecessor clearly had a direct contract with the general contractor, that contract did not require it to *"perform any of the Work at the site."* (emphasis added) And, although we agree with Canam that the term "Work" included materials and equipment, the contract, which directed that Canam furnish certain specified materials and deliver them to the jobsite, did not require Canam to "perform" anything "at the site." Further, the definition of "Work" did not expressly include one who has a contract to supply or deliver materials to the site. Accordingly, Canam was, as a matter of law, not a "subcontractor" under the general contract, and therefore, it cannot be afforded the benefit of the church's waiver of rights against "subcontractors." Hence, partial summary judgment in favor of Canam was error.

## II.

■ We also agree with Aetna that summary judgment was improperly granted in favor of Weingardt.

Under the terms of the general contract, the church and general contractor waived all rights against the architect and his agents. However, the contract further provided that the "foregoing waiver afforded the Architect, his agents and employees shall not extend to the liability imposed by Subparagraph 4.18.3." That subparagraph in turn states as follows:

> "The obligations of the Contractor under this Paragraph 4.18 shall not extend to the liability of the Architect, his agents or employees, arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications...."

Arguably, the parties intended some limitation on "the foregoing waiver" as to the liability referenced in 4.18.3. That is, the parties may have intended that the church did not waive its claims against the architect and his agents under those circumstances outlined in 4.18.3.

However, subparagraph 4.18.3 does not expressly "impose" any liability upon the architect or his agents. Thus, the parties may have intended that this provision only be a limitation on the scope of the contractor's obligation to indemnify the architect and his agents. Hence, it is unclear under

what circumstances the church's waiver of claims against the architect and his agents would not apply. Accordingly, we conclude that this contract language is ambiguous as to the parties' intent regarding whether the church waived all claims against the architect and his agents. *See Pepcol Manufacturing Co., supra; St. Paul Fire & Marine Insurance Co. v. Freeman–White Associates, Inc.,* 322 N.C. 77, 366 S.E.2d 480 (1988).

Hence, summary judgment was improper as questions of fact still exist as to the parties' intent. *See Gulf Insurance Co. v. State,* 43 Colo.App. 360, 607 P.2d 1016 (1979).

The judgments are reversed, and the cause is remanded for further proceedings.

SMITH and HODGES *, JJ., concur.