**Frank PETERS, Plaintiff–Appellee and Cross–Appellant,**

v.

**SMUGGLER–DURANT MINING CORPORATION and Last Chance No. 2, Inc., Defendants–Appellees and Cross–Appellants,**

**and**

**Golden Rule Resources, Inc., Intervenor–Appellant and Cross–Appellee.**

Nos. 93CA0040, 93CA0496.

Colorado Court of Appeals, Div. V.

April 6, 1995.*

As Modified on Denial of Rehearing June 29, 1995.**

Certiorari Denied Feb. 12, 1996.

Cross–Petition for Certiorari Granted Feb. 12, 1996.

---

\* Prior Opinion announced September 8, 1994 was WITHDRAWN. Petitions for Rehearing GRANTED.

\*\* Ney, J., would grant petition of plaintiff-appellee and cross-appellant.

Myler, Stuller & Schwartz, Sandra M. Stuller, Aspen, for plaintiff-appellee and cross-appellant.

Krabacher, Hill & Edwards, P.C., Thomas C. Hill, Joseph E. Edwards, Jr., Joseph E. Edwards, III, Aspen, for defendants-appellees and cross-appellants.

Coleman, Jouflas & Williams, Joseph Coleman, Gregory Jouflas, Grand Junction, for intervenor-appellant and cross-appellee.

Opinion by Judge ROTHENBERG.

In the first part of this consolidated action, Golden Rule Resources, Inc., (Golden Rule) appeals from the decree of the trial court quieting title to certain real property in Frank Peters. Peters cross-appeals from that judgment.

In the second part of this action, Smuggler–Durant Mining Corporation and Last Chance No. 2, Inc., appeal from a judgment granting Golden Rule specific performance of a contract for the sale of property encompassing the land subject to quiet title decree. Golden Rule cross-appeals from that judgment. We affirm in part, reverse in part, and remand with directions.

## I.

### *Golden Rule's Appeal re: Peters and Peters' Cross–Appeal*

In January 1970, Smuggler–Durant entered into a mining lease with Rheco–Lenado, Inc. Through a series of assignments, Golden Rule became the lessee in October 1983. The mining lease granted the lessee the right of exclusive possession to the real property and the right to purchase the property pursuant to the terms of a right of first refusal. Several cabins were located on the leased property.

On March 12, 1982, Frank A. and William J. Loushin executed a quitclaim deed in favor of Frank Peters, transferring their interest in the "cabin and land beneath, located on [property description]."

On September 23, 1983, Peters first paid taxes on the property.

On February 22, 1990, Peters filed a complaint against Smuggler–Durant under C.R.C.P. 105 claiming he was entitled to possession of the property as a result of his adverse possession for eighteen years and his payment of taxes and color of title for seven consecutive years.

On September 30, 1991, Peters filed an amended complaint adding Last Chance No.

2, Inc., as a defendant, reducing the amount of land claimed to 4.2 acres, and providing a detailed metes and bounds description of the 4.2. acres.

Following a trial to the court, the court entered a quiet title decree in favor of Peters finding: (1) Frank Loushin executed and delivered to Frank Peters a quitclaim deed, which Peters recorded, conveying "cabin and land beneath"; (2) Peters remained in possession of and paid taxes on three acres (more or less) of land and cabins numbered 1, 2, 3 for seven successive years before filing the claim; and (3) the deed was sufficient to constitute color of title to the 4.2 acres claimed by Peters. The court rejected Peters' claim of title by adverse possession of eighteen years.

## A.

Golden Rule first claims the trial court erred in finding Peters was entitled to possession of the property through the payment of taxes for seven successive years. More specifically, Golden Rule claims Peters paid taxes only for six years, four months and twenty-seven days before filing his complaint. We agree.

■ Initially, we reject Peters' assertion that Golden Rule has waived this argument by failing to raise it in a timely manner until it filed a post-trial motion for relief.

■ C.R.C.P. 16 requires each party to file a disclosure certificate setting forth, *inter alia,* a statement of claims or defenses and a brief and concise statement of all points of law that are to be relied upon by that party, citing pertinent statutes and cases. *See* C.R.C.P. 16(a)(I) and (IV). The information provided in a party's disclosure certificate is binding on that party. C.R.C.P. 16(c). Compliance with C.R.C.P. 16 is mandatory. *See J.P. v. District Court,* 873 P.2d 745 (Colo. 1994).

Here, Golden Rule concedes it did not comply with this rule. Nevertheless, Peters' assertion is inaccurate because Golden Rule did give notice of this issue, albeit on the eve of trial, when it specifically included the issue

in its trial brief and submitted dispositive authority in support of its position.

Moreover, Golden Rule denied the allegation in the complaint that Peters was entitled to the property by virtue of payment of seven years taxes and color of title. Consequently, Peters' assertion of title based upon the seven-year statute was contested and at issue for trial.

Given the denial in the complaint and the submission of Golden Rule's trial brief, we conclude that the issue was not waived.

■ We next address and reject Peters' contention that Golden Rule lacks standing to bring this appeal because Golden Rule did not have an ownership interest in the property claimed by Peters.

We note that, in its brief, Golden Rule asserted that Peters failed to raise the standing issue at trial and, therefore, may not raise it here. However, the record shows that Peters did raise the standing issue in a pleading entitled "Plaintiff's Answer to Counterclaim and Counterclaim" and again raised it in his trial data certificate.

■ In any event, lack of standing is a jurisdictional issue and may be raised at any time. *Clinic Masters, Inc. v. District Court,* 192 Colo. 120, 556 P.2d 473 (1976); *Bennett v. Board of Trustees,* 782 P.2d 1214 (Colo. App.1989).

■ The resolution of standing requires a court to determine whether a plaintiff was injured in fact and whether the injury was to a legally protected right. *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977).

In March 1990, shortly after Peters filed his action to quiet title, Golden Rule moved to intervene, asserting that it had an interest in the property claimed by Peters and that it would sustain an injury in fact to a legally protected right if Peters prevailed. More specifically, Golden Rule claimed that: (1) it had a leasehold interest in the property under a mining lease which entitled Golden Rule to exclusive possession; and (2) the lease gave Golden Rule a right of first refusal to purchase the property.

No objections were filed to Golden Rule's motion to intervene and, in May 1990, the trial court granted it.

On November 14, 1991, Golden Rule sent a letter to Smuggler–Durant advising it that Golden Rule had elected to exercise its right of first refusal and to purchase the property.

On November 29, 1991, Peters filed a responsive pleading, as noted earlier, raising the issue of whether Golden Rule had standing to challenge Peters' claims.

■ A right of first refusal differs in significant respects from an option to purchase. An option to purchase gives the option holder the power to compel the owners to sell at a stipulated price, whether the owners are willing or not. *See Kroehnke v. Zimmerman,* 171 Colo. 365, 467 P.2d 265 (1970).

In contrast, the holder of a right of first refusal has an interest in land which is to vest, if at all, sometime in the future. The right of first refusal ripens into an option upon the happening of a contingency: the decision of the obligated party to accept a third-party's offer for the property. It does not, at the time it is given, include an operative offer. Instead, the right of first refusal involves a future offer to be made if and when the owners decide to sell the property to a third party at an agreed upon price. *Morrison v. Piper,* 77 N.Y.2d 165, 565 N.Y.S.2d 444, 566 N.E.2d 643 (1990). *See Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13 (1977).

Thus, because one with a right of first refusal may never receive the opportunity to purchase the property, we agree with Peters that Golden Rule's right of first refusal and its leasehold interest did not confer standing upon it to contest Peters' claims of adverse possession.

■ However, when a right of first refusal is involved, once the owners evidence an intent to sell the property, the right of first refusal is activated and converted into an irrevocable option to purchase. *Vorpe v. Key Island, Inc.,* 374 So.2d 1035 (Fla.App.1979). An option to purchase is an interest affecting title to property. *See Province v. Johnson,* 894 P.2d 66 (Colo.App.1995).

Thus, when a right of first refusal is ignored and the property held subject to it is sold to a third party without first giving notice to the holder of the right of first refusal and an opportunity to buy the property, the holder of the right is entitled to relief. *See Atchison v. City of Englewood, supra.*

Here, by the time Peters filed his pleading raising the issue of standing, a third party had made an offer to purchase the property and the owner, Smuggler–Durant had evidenced an intent to accept that offer, thereby activating Golden Rule's right of first refusal and converting it to an irrevocable option to purchase. *Vorpe v. Key Island, Inc., supra.* Nevertheless, the owner, Smuggler–Durant, had not notified Golden Rule of the offer, but Golden Rule had indirectly learned of it and had sent a letter to Smuggler–Durant stating its intent to exercise its right of first refusal and to purchase the property.

Despite Golden Rule's exercise of its right to purchase, Smuggler–Durant refused to sell the property to Golden Rule, resulting in a lawsuit by Golden Rule against Smuggler–Durant to enforce its right to purchase the property.

Further, Smuggler–Durant chose not to defend against Peters' claims to the property and did not even appear at trial to contest them.

Under these circumstances, we therefore conclude that, by the time the matter was in issue, Golden Rule met the general standing requirements established in *Wimberly v. Ettenberg, supra.*

■ We next reject Peters' argument that the seven-year period required under § 38–41–108, C.R.S. (1982 Repl.Vol. 16A), the color of title statute, should be calculated from the date of the amended complaint, rather than Peters' initial complaint.

The record reflects that Peters' original complaint was filed in February 1990. At trial, and again in his brief on appeal, Peters has asserted that his original complaint did not allege a claim under the seven-year color of title statute. However, contrary to his representations, not only did his original complaint claim a right of adverse possession under § 38–41–101, C.R.S. (1982 Repl.Vol.

16A), the eighteen year statute, it also alleged adverse possession "through payment of taxes and color of title for more than seven years."

Thus, there is no merit to Peters' contention that the date of filing the amended complaint should govern the calculation of the seven years.

■ Turning to the merits, we also reject Peters' contention that he complied with the seven-year payment of taxes requirement of § 38–41–108, C.R.S. (1982 Repl.Vol. 16A) by making seven successive payments for taxes between 1983 and 1990, when the complaint was filed.

Section 38–41–108 states:

Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, *who for seven successive years continues in such possession and also during said time pays all taxes legally assessed* on such lands or tenements shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his paper title. (emphasis added)

The trial court's findings are brief. It found that: "[T]axes were paid for seven successive years prior to the filing of this claim."

However, a series of early cases construing predecessor statutes to § 38–41–108, containing language almost identical to the present statute, have held that seven full years must expire between the time when the person claiming the property under color of title first pays taxes and the commencement of his or her lawsuit. *See Whitehead v. Bennett,* 92 Colo. 549, 22 P.2d 168 (1933); *Cristler v. Beardsley,* 25 Colo.App. 369, 138 P. 68 (1914); *Empire Ranch & Cattle Co. v. Howell,* 22 Colo.App. 584, 126 P. 1096 (1912), *rev'd on other grounds,* 60 Colo. 192, 152 P. 1177 (1915). We are bound by that precedent.

Here, the undisputed facts show Peters first paid taxes on the property on September 23, 1983, and he filed his complaint on February 22, 1990. Although it is true that

he made seven successive payments of taxes—in 1983, 1984, 1985, 1986, 1987, 1988, and 1989—nevertheless, seven full years did not pass between the time when Peters first paid the taxes and the commencement of his lawsuit. *Whitehead v. Bennett, supra.*

Therefore, his cause of action under the seven-year statute fails.

### B.

We next consider Peters' claim, made on cross-appeal, that the trial court erred in finding he failed to establish a claim for adverse possession under § 38–41–101, C.R.S. (1982 Repl.Vol. 16A), the eighteen-year statute. We disagree.

Here, the trial court's order is brief and states: "That the Plaintiff has failed to establish his claim to 4.2 acres by adverse possession pursuant to the provisions of § 38–41–101, C.R.S." After thoroughly reviewing the record, we conclude there is record support for the trial court's conclusion.

Peters claimed adverse possession based upon tacking arising from his grantor's eighteen-year possession. He presented evidence that, for decades, his grantor had occupied a portion of the property claimed by Peters, that is, cabin number one, a wood pile immediately adjacent to it, and an outhouse forty feet from it. However, there also was evidence introduced that Peters' grantor had abandoned the claim to the property.

Peters' alternative assertion was that he himself had occupied the property for the requisite eighteen year period. However, again, the evidence was sharply contradictory of that claim.

In a bench trial, the court is the factfinder and is entitled to weigh the disputed evidence and determine the credibility of the witnesses. Even unrefuted evidence is not binding on the factfinder. *Levy v. Everson Plumbing Co.,* 171 Colo. 468, 468 P.2d 34 (1970). The court's findings will be upheld if they are supported by the record and the reasonable inferences from the evidence. *In re Marriage of Wisdom,* 833 P.2d 884 (Colo. App.1992).

Given the evidence here, and the reasonable inferences that may be drawn therefrom, the trial court was within its authority in rejecting Peters' evidence as to the eighteen-year claim. Thus, since there is record support for its conclusion, the trial court did not err in finding that Peters had failed to prove his claim under the eighteen-year adverse possession statute.

Since we have concluded earlier that Peters' claim under the seven-year statute also fails as a matter of law, the trial court's decree of quiet title in favor of Peters must be reversed.

### C.

In view of this disposition, we need not consider Golden Rule's final contention that the trial court also erred in finding Peters had established color of title to 4.2 acres or to anything more than the cabin and the land under it.

### II.

*Smuggler–Durant's Appeal against Golden Rule*

Smuggler–Durant's appeal also arises out of provisions contained in the mining lease between Smuggler–Durant and Golden Rule. Of specific importance is the section relating to termination of the lease because of lessee's defaults and the section giving Golden Rule a right of first refusal to purchase the property.

On September 15, 1989, Smuggler–Durant sent Golden Rule notice of defaults for failing to pay taxes and evict trespassers living in cabins on the property.

On November 2, 1989, Golden Rule responded by letter to Smuggler–Durant, stating its willingness to pay taxes due or paid by Smuggler–Durant and outlining its efforts to determine the rights of the occupants of the cabins. Golden Rule also asked for Smuggler–Durant's help in determining the claims for possession. Smuggler–Durant did not respond to Golden Rule's letter or to two subsequent letters sent by Golden Rule.

On May 29, 1990, Smuggler–Durant received from George S. Stranahan, John R.

Wedum, and Stefan Albouy (the Stranahan Group) a written offer to purchase the property. At trial, the president of Smuggler–Durant testified that she signed the offer and sent it to her attorney with specific instructions that he not deliver it to anyone. She also testified that Smuggler–Durant subsequently determined the offer was not acceptable.

After the president of Smuggler–Durant signed the offer, the Stranahan Group prepared a second addendum to the contract which provided that the contract was not binding unless the Stranahan Group obtained a written waiver of the right of first refusal from Golden Rule. Smuggler–Durant did not accept or sign the addendum.

Despite the provision in the lease giving Golden Rule a right of first refusal to purchase the property, Smuggler–Durant did not send Golden Rule notice of the proposed sale to the Stranahan Group. Smuggler–Durant claims it did not send notice because no binding contract had been entered into.

Smuggler–Durant then sent Golden Rule notice of additional defaults under the lease, including the failure of Golden Rule to pay consumer price index increases and to meet reclamation obligations. Golden Rule timely addressed the defaults and made efforts to cure them.

On May 7, 1991, Smuggler–Durant entered into a contract to sell the property to Daniel Delano or his assigns and, on May 9, 1991, Smuggler–Durant sent Golden Rule notice of the right of first refusal.

On November 8, 1991, Golden Rule received, for the first time, a copy of the signed contract between Smuggler–Durant and the Stranahan Group. Golden Rule notified Smuggler–Durant of its election to purchase the property based on the terms of the Stranahan Group contract. However, Smuggler–Durant refused to convey the property to Golden Rule. Smuggler–Durant subsequently transferred the property to Delano's assignee, Last Chance, for $200,000.

Golden Rule then filed an action against Smuggler–Durant seeking, *inter alia*, specific performance of its right of first refusal based on the terms of the Stranahan Group contract.

Following a trial to the court, the court entered a decree of specific performance requiring Smuggler–Durant to convey the property to Golden Rule. In doing so, the court found: (1) the lease did not require a binding contract for sale to give rise to the right of Golden Rule to purchase the property, but required only an intent to sell on specific price terms; (2) Smuggler–Durant intended to sell the property to the Stranahan Group on the price terms set out in the fully signed offer and acceptance; (3) Smuggler–Durant's argument that Golden Rule's defaults under the lease defeated its right of first refusal must fail because the lease provides a right to cure defaults by purchase of the property; (4) Golden Rule did not make certain payments for taxes and CPI adjustments; (5) Smuggler–Durant and Last Chance spent $19,000 on reclamation and evictions which were Golden Rule's obligations under the lease; (6) Golden Rule should pay these amounts to Smuggler–Durant and Last Chance as adjustments to the purchase price at closing; and (7) since Golden Rule will become the owner of the property under the terms of the decree of specific performance, Smuggler–Durant is not entitled to future damages for Golden Rule's failure to comply with reclamation laws, or to attorney fees.

### A.

■ Smuggler–Durant first claims the trial court erred in granting Golden Rule's request for specific performance. More specifically, Smuggler–Durant claims the trial court erred in finding the lease did not require a binding contract for sale in order to give rise to Golden Rule's right of first refusal. We disagree.

■ The interpretation of a written contract is generally a question of law for the court. *Aetna Casualty & Surety Co. v. Can-am Steel Corp.,* 794 P.2d 1077 (Colo.App. 1990). If there is no ambiguity in a contract, it will be enforced according to its provisions, with its words accorded their plain and generally accepted meaning. *Heller v. Fire Insurance Exchange,* 800 P.2d 1006 (Colo.

1990). *See also Hudgeons v. Tenneco Oil Co.,* 796 P.2d 21 (Colo.App.1990) (the fact the parties have different opinions about the interpretation of a deed does not of itself create an ambiguity).

Section 20 of the lease provides, in pertinent part:

> *If ... Lessor intends to sell ...* Lessor shall deliver to Lessee at least thirty (30) days prior written notice, describing all of the terms of the proposed sale.... Lessee shall have the exclusive right, during the above thirty (30) day period, at its election, to purchase the Premises described in said notice, for a sum of money equal in value to the consideration which would be received by Lessor under the terms set forth in the written notice.... (emphasis added).

Here, Smuggler–Durant claims the lease requires a complete and binding contract before the lessee is entitled to a notice of the right of first refusal, and a binding contract did not exist because it did not obtain a waiver of Golden Rule's right of first refusal. In contrast, Golden Rule argues the right of first refusal arose because Smuggler–Durant had the intent to sell, as evidenced by the fully executed contract.

Upon reviewing the record, we find no error in the court's conclusion that the lease did not require a binding contract to trigger Golden Rule's right of first refusal. The plain language of the lease requires lessor to send lessee written notice with all of the terms of the proposed sale, if lessor *intends* to sell the property. Here, the seller and buyer signed the contract, and, but for a resolution of Golden Rule's right of first refusal, Smuggler–Durant would have sold the property to the Stranahan Group.

Similarly, we find record support for the trial court's finding that Smuggler–Durant's actions constituted a clear intent to sell the property and, as such, triggered Golden Rule's right of first refusal. And, since Smuggler–Durant failed to send Golden Rule notice of its right of first refusal, the trial court did not err in granting Golden Rule's request for specific performance.

## B.

We also reject Smuggler–Durant's claim that, because Golden Rule was in default under the lease, Golden Rule was not entitled to the equitable remedy of specific performance.

Section 19(A) of the lease addresses the issue of default by the lessee. It provides:

> In the event of any default by Lessee in the performance of its obligations hereunder, Lessor shall give to Lessee written notice specifying the default. If the default is not cured within sixty (60) days after Lessee has received the notice, or if lessee has not within that time (i) begun action to cure the default and does not thereafter diligently prosecute such action to completion, or (ii) served notice of its exercise of the option to purchase, Lessor may terminate this agreement by delivering to Lessee written notice of such termination, subject to lessee's rights to remove its property and equipment from the premises, as hereinafter provided. Lessor shall have no right to terminate this agreement except as set forth in this paragraph.

As previously noted, on September 15, 1989, Smuggler–Durant sent Golden Rule notice of alleged defaults for failure to pay taxes and evict trespassers. On November 2, 1989, Golden Rule sent a letter to Smuggler–Durant, stating it was attempting to cure the defaults. It is undisputed that Smuggler–Durant did not respond to that letter or to two additional letters sent by Golden Rule. Golden Rule also presented testimony at trial that it tendered payment for the taxes but Smuggler–Durant refused to accept them and that Smuggler–Durant did not send Golden Rule written notice of termination as required under section 19(A).

These were the only alleged defaults which preceded the 1990 Stranahan Group contract, and we conclude, in any event, that such defaults were not material.

Under these circumstances, the trial court properly rejected Smuggler–Durant's contention that defaults by Golden Rule precluded the equitable remedy of specific performance.

We have considered Smuggler–Durant's remaining contentions and conclude that they are without merit.

## III.

### Golden Rule's Cross–Appeal Against Smuggler–Durant

 On cross-appeal, Golden Rule claims the trial court erred in awarding reclamation and eviction expenses to Smuggler–Durant and Last Chance. Since the trial court's findings are supported by the record, they will not be disturbed on appeal.

The judgment quieting title in favor of Peters in District Court # 90CV042 is reversed, and the cause is remanded for further proceedings in accordance with the views expressed in this opinion. The judgment in District Court # 91CV149 is affirmed.

CASEBOLT, J., concurs.

NEY, J., concurs in part and dissents in part.

Judge NEY concurring in part and dissenting in part.

I dissent to the portion of the majority's opinion determining that Peters' claim under § 38–41–108, C.R.S. (1982 Repl.Vol. 16A) is not sustainable.

A fair reading of § 38–41–108 indicates that, to establish ownership of land in a quiet title action, an adverse possessor must:

1) Have actual possession for seven years under claim and color of title made in good faith; and

2) Pay all taxes legally assessed on the property during the period of possession.

The trial court found, and the defendant and intervenors do not dispute, that Peters was in possession for more than seven years and that he claimed his interest under color of a quitclaim deed made in good faith and recorded on March 12, 1982, more than seven years prior to the filing of this action. Further, there is no dispute that Peters paid all taxes legally assessed against the property from 1982 through 1989 prior to filing this action in 1990.

Based on the undisputed evidence that Peters paid all taxes *assessed* against the property during the seven-year period of possession under color of title, the trial court concluded that: "[T]axes were paid for seven successive years prior to the filing of this claim."

Because the taxes assessed for the year 1982, a year when Peters was in possession under color of title, were paid on September 23, 1983, six years, four months and twenty-seven days before the filing of the complaint, the majority concludes that the trial court erred in finding seven years payment of assessed taxes on the property.

The plain language of § 38–41–108 does not, however, require that the first payment be made seven years prior to the filing of the action. The statute merely requires that, to be declared the legal owner of the land, the possessor must pay all taxes legally assessed on the property during the seven successive years of possession under color of title.

Based upon its reading of *Whitehead v. Bennett,* 92 Colo. 549, 22 P.2d 168 (1933), the majority concludes that the first payment must be made more than seven years prior to the filing of the action. However, I conclude that *Whitehead* does not impose such a requirement.

The complaint in *Whitehead* alleged that plaintiff had paid taxes for a period of seven years before filing suit to quiet title by adverse possession. Because defendant did not specifically deny this allegation, plaintiff argued that the allegation was deemed admitted and that he was, therefore, relieved of the burden of proving this element of his adverse possession claim. *Whitehead* does not disclose the length of time, if any, for which plaintiff paid assessed taxes.

The supreme court concluded that plaintiff's claim failed as his allegation was not supported by the facts in evidence which showed that the first payment of taxes was made less than seven years before plaintiff filed the quiet title action. It is this language, which would impose a requirement not found in the statute, upon which the majority relies.

However, the next paragraph of the opinion expressly states that plaintiff's claim failed only because he did not prove payment of taxes for the required period of time. On the basis of this language, I conclude that the supreme court did not read an additional requirement into the adverse possession statute.

I further conclude that the majority's reliance on *Cristler v. Beardsley*, 25 Colo.App. 369, 138 P. 68 (1914) and *Empire Ranch & Cattle Co. v. Howell*, 22 Colo.App. 584, 126 P. 1096 (1912), is misplaced. I do not believe these cases support the conclusion reached by the majority because they are factually distinguishable: Both *Cristler* and *Empire* concern the possessor's color of title and payment of taxes after purchasing a deed at a tax sale held to satisfy overdue taxes.

The evidence amply supports the trial court's conclusion that Peters was in possession under color of title made in good faith for a period more than seven years prior to filing this action and that he paid all taxes legally assessed on the land during that period. Therefore, I would affirm the judgment of the trial court related to Peters' claim under § 38–41–108.

I concur as to the remaining parts of the opinion.