[No. 8553.]

STRACHAN V. DRAKE.

1. SPECIFIC PERFORMANCE—*Certainty of Contract.* Less certainty is required in a contract which has been so far performed that to permit the repudiation of it will work a fraud upon the party seeking the relief. (455.)

Contract providing for the purchase by defendant from plaintiff of a certain portion of a tract of lands immediately before that purchased by plaintiff from Brown, contained the provision "Water Rights with the place same as bought of Brown." Defendant contended that the uncertainty as to the water rights so to be acquired was a bar to specific performance. But it being manifest that at the time of the agreement the parties had in mind the particular shares in certain irrigation companies, by which, for years, water had been supplied to the whole tract, this contention was repelled; and plaintiff having tendered a conveyance of the land contracted for, and a share of the water rights proportionate thereto, this was held sufficient on his part. (451-453.)

2. —— *Construction of Agreement—Part Performance—Effect.* Plaintiff had purchased, at the instance of defendant, one hundred and twenty acres of land, in order to enable defendant to obtain other lands, part of the tract, which the owner refused to dispose of, except as a whole; and in consideration of such purchase, and pursuant to a previous parol agreement, defendant agreed in writing to purchase of defendant, at a time named, and at a price specified, a particular part of the one hundred and twenty acres. *Held* that the whole transaction was to be considered, not merely the agreement of defendant to purchase the land specified therein, but the plaintiff's purchase of the one hundred and twenty acres at defendant's request, and that thereby the defendant had been enabled to acquire the part of the lands conveyed to him by the former owner; and that defendant having accepted benefits under the contract so construed was not in position to say that it lacked consideration. (451.)

3. —— *Mutuality of Remedy.* Defendant's contract to purchase land, specific performance of which was demanded, was expressly conditioned upon plaintiff's election to sell, to be made at a day specified, and it was contended that this deprived defendant of the mutuality necessary to the remedy of specific performance. *Held* that when plaintiff's election was in fact made the contract became enforceable as well by defendant as plaintiff. (451.)

4. —— *Loss by Destruction or Deterioration.* The contract provided that plaintiff should "turn said place over * * * with water rights same as bought of Brown." Among other water rights plaintiff was then entitled to stock in a reservoir company the works of which were destroyed by flood shortly after the making of the contract. *Held* that the loss not being chargeable to any act or neglect of plaintiff was no impediment to the relief demanded. (452.)

5. APPEAL AND ERROR—*Questions not presented below,* will not be entertained in the court of review. (454.)

6. ——*Rehearing.* A party will not be heard to present, upon rehearing, a contention not made in the pleadings and to which there was no reference in the trial court. (455.)

*Error to Larimer District Court.* Hon. ROBERT G. STRONG, Judge.

Mr. L. R. RHODES, for plaintiff in error.

Mr. T. J. LEFTWICH and Mr. L. R. TEMPLE, for defendant in error.

Mr. Justice BAILEY delivered the opinion of the court.

Plaintiff in error, Alex Strachan, hereinafter called plaintiff, was a farmer possessed of a leasehold estate in a farm containing 138 acres, in high state of cultivation, situated in Larimer County and owned by one James A. Brown. He had been the lessee of these lands for about ten years, during which time he had accumulated approximately $10,-000. Defendant in error, W. A. Drake, hereinafter called defendant, was Strachan's neighbor, owning adjoining farms. The farm upon which plaintiff resided was divided by a county road, 18 acres lying north and 120 acres south thereof. The 18 acres lying north of the road formed a

part of the section the remainder of which constituted one of the farms of defendant. The water with which the 138 acres were irrigated was represented by fifteen shares of North Poudre, three and one-half shares of Larimer County No. 2 Ditch, and ten shares of Timberline reservoir stock. Defendant desired to purchase the 18 acres lying north of the road, and so become the holder and owner of the entire section of which they constituted a portion, but Brown refused to sell that tract separately. Defendant went to plaintiff and proposed that the latter purchase the entire Brown farm, and then sell him the 18 acres, and upon plaintiff showing some interest in the suggestion, Drake went to Brown and ascertained the price to be $30,000 for the entire 138 acres, and presently thereafter communicated this price to plaintiff, who feared that the proposition was too big for him to handle, and indicated that he would not undertake to acquire and carry the 120 acres on that basis, suggesting in turn that defendant take what they knew as the "west forty" of the 120 acres in addition to the 18 acres, leaving the remaining 80 acres for plaintiff. Defendant would not at that time accede to this, but told plaintiff that he would take the 18 acres, and if at the time the balance of the purchase price fell due plaintiff felt it necessary to dispose of that quarter section, he would then take it at the price the latter was to pay for it, to-wit: $217.39 an acre.

Later, and on the 18th day of June, 1906, plaintiff, defendant and Brown met at the latter's office, discussed the proposed deal, and closed it. On that day a written contract was made between plaintiff and Brown, which acknowledged the payment down of $2,000, and stipulated that Brown would convey the 120 acres to plaintiff by warranty deed upon the payment of the further sum of $8,000 on March 1st, 1907, and the giving of a note for the balance of the purchase price, $16,087, due in five years, payment thereof to be secured by mortgage on the 120 acres. On the day

named plaintiff paid the $8,000, making the total amount paid $10,000, and received a deed according to the terms of the contract. At the time the deal was closed all parties agreed, in order to expedite matters and avoid the making by plaintiff* of a subsequent transfer of the 18 acres to defendant, that instead of making a contract of sale of the whole farm to plaintiff, Brown should deal direct with defendant as to the 18 acres, which was accordingly done by a written contract similar to the one executed between plaintiff and Brown. By the respective deeds resulting from this arrangement the defendant acquired with the 18-acre tract two shares of North Poudre, one-half of a share of Larimer County No. 2 Ditch,' and two shares of Timberline reservoir stock, while plaintiff acquired for the 120-acre tract thirteen shares of North Poudre, three shares of Larimer County No. 2 Ditch, and eight shares of Timberline.

At the meeting referred to, and prior to the execution by Brown of the respective contracts of sale to plaintiff and defendant, the latter made and delivered to the former an instrument in writing, which reads as follows:

"Fort Collins, Colorado, June 18, 1906.

"For one dollar cash in hand paid by Alex Strachan to W. A. Drake, the receipt of which is hereby acknowledged, said Drake agrees to purchase of said Strachan for the sum of ($217.39) two hundred and seventeen 39/100 dollars per acre the following described forty acres of land: The northeast quarter of the northwest quarter of Section 25-7-69; providing that Strachan so elects, on March 1st, 1912. Said Strachan to turn said place over one-half well-seeded to alfalfa—all in good condition, with water rights with place, same as bought of J. A. Brown.

W. A. Drake."

When the note, representing the balance of the purchase price, fell due on March 1st, 1912, plaintiff indorsed

upon the above instrument his election to sell to defendant the forty acres therein described, and soon thereafter notified the latter of such election.  Plaintiff undertook to apportion the water stock he had received with the 120 acres under his contract with Brown on a basis of one-third thereof to defendant for the 40 acres described in the instrument above set out, by turning the certificates back to the respective companies and procuring the issuance of new ones, in which he succeeded as to the North Poudre and Larimer County No. 2 Ditch, but failed as to the Timberline stock. He then had the 40-acre tract released from the deed of trust in favor of Brown upon the whole 120 acres, and executed a warranty deed for the 40 acres in question to Drake, including in it by description one-third of all the respective water shares he had acquired with the 120 acres, and thereupon made tender thereof to defendant, who refused performance on the ground that the contract was not enforcible.

The facts concerning the water and its relation to the land are as follows: The rights in North Poudre and Larimer County No. 2 Ditch had supplied the land for years, the former being available for irrigation at times later in the season than the latter. Timberline stock represented shares in a reservoir owned by a company, and located in the mountains about forty miles distant, at an altitude indicated by its name, which water was for use late in the season. This reservoir was destroyed by flood during the latter part of June, 1908, just after the contract of sale of the lands in question was made, and the reservoir company decided that it would be impractical to reconstruct it.  Defendant had served in the capacity of president of the reservoir company, and at the time of the sale under consideration owned about one-third of its capital stock, the balance thereof being held by divers owners of land located in the vicinity of his farm. He testified that he resigned the office some time previous

to the commencement of these proceedings, though such fact did not appear by the records of the company. When Brown closed the deal with plaintiff and defendant he attempted to have the certificate of shares in the Timberline company, then standing in his name, canceled and new ones issued to them for the respective number of shares each was to receive under the contract, but defendant refused to sign certificates of stock as president of the company, upon the ground that he was not in fact such officer. Nor was plaintiff able to ascertain another person clothed with the authority of that office, and so it was impossible for him to tender to defendant a certificate of shares in the Timberline Company. However, plaintiff included in the warranty deed tendered one-third of the eight shares he had received with the 120 acres, or two and two-thirds shares, and further offered in open court to make such assignment or disposition of any or all interest held by him in the Timberline company as might be considered proper in the premises. Water had been received out of the Timberline reservoir during the year 1905 by some of the shareholders, other shareholders receiving none, and while the record is not clear upon the matter, it seems that this was the first delivery of water therefrom, and consequently the only delivery, owing to its destruction by flood in June of the following year.

This proceeding was instituted in the District Court of Larimer County to compel specific performance of the contract. The plaintiff's theory of the case, according to which the complaint was drawn, is that the instrument of date June 18th, 1906, above quoted, was executed and delivered by defendant as a part of the agreement between himself and defendant, which had been partially performed, whereby the latter acquired the 18 acres of land subsequently conveyed to him by Brown, and as a consideration for the plaintiff to enter into the agreement with Brown for the purchase of the 120 acres. Defendant took the view that

such instrument should stand or fall by its own terms, without reference to anything else. A demurrer was interposed to the complaint and overruled, and in due course motion was made for judgment on the pleadings, which met with like disposition.

The execution and delivery of the instrument is admitted, also the notice of election to sell and tender thereunder by plaintiff, as alleged in the complaint, but objection was made to all evidence introduced tending to show the circumstances under which it was executed, or from which its full import could be deduced. Its validity was challenged under the statute of frauds, and its sufficiency was attacked for want of consideration, want of mutuality, failure of subject-matter, and upon the ground that it is vague, indefinite and uncertain in that the water to be conveyed is not therein particularly described. Upon trial to the court the relief sought was refused, and plaintiff brings the case here on error for review. The only finding by the trial court was a general one in favor of defendant and against plaintiff, but there is sufficient in the record to indicate conclusively that the court reached its judgment upon the sole ground that the contract is too indefinite and uncertain for specific enforcement.

The allegations of the complaint and the proofs adduced in support thereof establish a parol contract for the sale of lands and water rights, which has been partially performed. The defendant does not deny the voluntary execution and delivery of the instrument dated June 18th, 1906, prior to closing the deal, as an inducement to plaintiff to purchase the Brown land, nor does he dispute the contention that it was only by incurring the obligation therein recited that he was enabled to get the 18-acre tract, the owner having declined to sell separately. The primary thing upon which the minds of the parties met was the purchase of the Brown farm by plaintiff, making it possible for the defend-

ant to acquire the 18 acres upon terms mutually agreeable. Looking to the substance of the transaction, rather than to its form, the situation should be treated in all respects the same as though the contract of sale from Brown to plaintiff had included the whole farm, and plaintiff had in turn conveyed the 18 acres to defendant, since the course of dealing actually pursued was admittedly for no other purpose than to accomplish that result. Accordingly, the writing of June 18th, to the literal terms of which defendant confines his defense, while constituting some evidence of the understanding reached between the parties at the time, is not the sole and exclusive guide for measuring their rights in this controversy. On the contrary, the whole transaction is properly for consideration in order to reach a just conclusion as to the respective rights of the parties. That there was a part performance of the contract to the advantage of defendant, and that he personally wrote and delivered that instrument, are facts which equity should not ignore. Defendant accepted benefits under the contract, and he is therefore not in position to say that it lacked consideration. Furthermore, having accepted such benefits, he cannot invoke the statute of frauds to nullify the unperformed part of the contract, evidenced by the writing of June 18th. Pomeroy, Equity Jurisprudence, 3rd ed., sec. 921.

By the terms of the contract its performance was to be consummated at a future time, to-wit: March 1st, 1912, at the option of plaintiff. Defendant contends that this robs it of mutuality of remedy, and that specific performance was properly refused. Whatever objection may have been available on this ground prior to the exercise by plaintiff of the right of election, when the election was in fact made, the contract became enforceible by defendant as well as plaintiff. Pomeroy on Specific Performance of Contracts, 2nd ed., secs. 167-169, and note; 1 Ames, Equity Jurisdiction Cases, p. 429. The case of *Rude v. Levy*, 43 Colo. 482, 96

Pac. 560, 24 L. R. A. (N. S.) 91, 127 Am. St. 123, cited by defendant to sustain his contention on this score, does not do so. On the contrary it is, as we read and understand it, an authority directly the other way.

The fact that the writing introduced is evidence of a part only of the contract should be constantly kept in mind. A portion thereof had been performed to the admitted benefit of the defendant, and he should not be permitted to take advantages, manifestly opposed to equitable considerations when the contract is considered as a whole, based exclusively upon the optional and unperformed part of it. Since plaintiff did elect, equity looks to the time of the inception of the contract, there being no question of the consideration therefor, and treats it as being in full force and effect from that date. To concede the argument of defendant would be to sanction fraud, not actual fraud in the sense of conscious and deliberate deceit, but improper and unfair conduct, with which courts of equity so frequently have to deal. In this view, did the destruction of Timberline reservoir by flood very soon after the contract was made render performance by plaintiff impossible, and preclude him from having specific performance thereof by defendant? The affirmative of this question is presented by defendant no doubt upon the theory that any loss by deterioration in value or destruction of the property subject-matter prior to the date of performance under the contract falls upon the vendor. Such rule is not applicable to a case, such as this, involving no question of negligence on the part of the vendor. As a general rule, where the contract is one of which specific performance could be decreed, ownership in equity vested in the vendee at the time it was made, and any subsequent appreciation or depreciation in value of the property subject-matter, no question of negligence of the vendor arising, is the vendee's gain or loss. Pomeroy on Specific Performance of Contracts, 2nd ed., secs. 314, 315, 317, 320, 322, 327; 1 Ames,

Equity Jurisdiction Cases, p. 227; 2 Keener, Equity Jurisdiction Cases, pp. 403, 421; 2 Scott, Cases on Equity, p. 450; 1 Scott, Cases on Equity, p. 425; 7 Modern American Law, pp. 41-42. The defendant had received full consideration for the assumption of this risk through that part of the contract already performed.

Counsel for the defendant contend that the contract was vague, uncertain and indefinite as to the water rights to be conveyed with the quarter section, and say that this view was taken by the trial court as controlling. The writing of June 18th contained the designation "water rights with place same as was bought of J. A. Brown." Considering all that took place between the parties, it appears beyond doubt that they had in mind the water rights represented by shares in North Poudre, Larimer County No. 2 Ditch and Timberline, or those stocks which Brown conveyed with the land. It is true the exact amount of these several water stocks the defendant was to receive with the 40-acre tract does not appear, but it cannot be fairly contended that he did not know the kinds of water stocks, as well as the precise number of shares of each, acquired by plaintiff with the three quarter sections of land, nor is it disputed that there was no uncertainty and indefiniteness in the contract as to the particular quarter-section of the three he agreed to purchase. Less certainty is required in a contract performed to such an extent that to permit a repudiation of it would work a fraud upon the rights of the party against whom the rule is invoked. Fry on Specific Performance, 5th ed., sec. 386. Such a situation is presented in this case, and since to deny the relief would be to sanction the perpetration by defendant of a palpable wrong against the rights of the plaintiff, causing a loss not readily within compensation, the former should not be permitted to invoke the aid of such a rule to defeat the manifest purposes and demands of equity.

The land to be conveyed, as well as the character of the water rights, were definite and certain. The plaintiff divided the shares of stock representing the water rights he had received with the 120 acres of land upon the basis of one-third thereof for the 40 acres to be conveyed to defendant, and did all reasonably to be expected or demanded of him. It is not claimed that such proportion of the water was inadequate for complete irrigation of the 40 acres, nor that the division was in any respect inequitable. Under such circumstances, a conveyance of that portion of the water applicable to the 120 acres, as the 40 acres bears thereto, or one-third, constituted a sufficient performance, or tender of performance, by plaintiff to permit him to call the defendant to account. It is sufficient for the purposes of the remedy that there be a substantial performance of the contract by plaintiff. Pomeroy on Specific Performance of Contracts, 2nd ed., sec. 325.

The defendant drew the writing under consideration, was therefore intimately acquainted with its terms and as well with the consideration for it, understood perfectly about the water rights therein referred to, knew the character of the land and its necessities in this behalf, and under such circumstances, having taken large benefits under the agreement in its entirety, out of which the writing grew, is clearly not in position to maintain that the written portion thereof is too uncertain and indefinite to be specifically enforced.

There is some suggestion in the brief to the effect that one-half of the 40-acre tract was not well seeded to alfalfa, as provided for in the writing. This is not a matter of substantial moment in any event, but since no such defense was pleaded or relied upon below, it manifestly cannot now be successfully interposed as a reason why defendant should not be held to full and specific performance.

It appears from the petition for a rehearing, for the

first time during the history and progress of the case, that defendant claims the right of an accounting from the plaintiff for rents and profits arising from the detention of the land for which, under his contract, he wrongfully declined to pay and accept a deed, and of which he persistently and unlawfully refused to take possession. No such issue was tendered by the pleadings, no proof was offered in that connection and the record is silent throughout upon the subject. The case was contested upon the proposition that there existed between defendant and plaintiff no enforcible contract. It would be a travesty on justice to now permit the former, when he finds his agreement about to be enforced, to inject new issues and try the case over on a theory never before relied upon or suggested.

Upon the whole record it clearly appears that plaintiff was entitled to the relief sought, and that a decree should have been rendered accordingly. The judgment therefore is reversed and the cause remanded, with directions to enter one in full conformity to and in compliance with the prayer of the complaint.

*Judgment reversed and cause remanded with directions.*

Original opinion modified and petition for rehearing denied.

Chief Justice GABBERT and Mr. Justice WHITE concur.

Decided April 3, A. D. 1916. Rehearing denied July 3, A. D. 1916.