## No. 9748.

### CARLSEN *v.* HAY, ET AL.

Decided January 10, 1921.

Action for specific performance of an alleged contract for sale of real estate. Judgment in damages for plaintiff.

*Affirmed.*

1. REAL PROPERTY—*Contract of Sale.* Where the owner of real prop-

erty makes a specific offer to sell, through a real estate broker, which offer is accepted by a purchaser, the negotiations being evidenced by letters and telegrams between the owner and broker, the transaction constitutes such a contract as may be specifically enforced.

2. SPECIFIC PERFORMANCE—*Damages.* Where the owner fails to carry out a contract for the sale of real property, and at the time of the trial it was beyond his power to specifically perform, a judgment against him for damages was sustained.

*Error to the District Court of Larimer County, Hon. George H. Bradfield, Judge.*

Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, for plaintiff in error.

Messrs. STOW, STOVER & MANTZ, for defendants in error.

MR. JUSTICE SCOTT delivered the opinion of the court.

THIS action was by the defendants in error to compel the specific performance of an alleged contract for the sale of real estate.

The defendants in error, plaintiffs below, lived in Larimer County, Colorado, and the plaintiff in error resided at Loup City, Nebraska. The land had been listed for sale by the defendant with Carl Anderson, a real estate agent at Fort Collins, Colorado.

The contract relied upon grew out of certain letters and telegrams exchanged between Anderson and defendant Carlsen. These were as follows:

"Fort Collins, Colo.
June 21, 1918.

C. C. Carlsen,
Loup City, Neb.

Have offer of seven thousand two hundred fifty dollars for farm you to pay nineteen eighteen water assessments and keep present cash rent can pay thirty-two hundred fifty dollars down balance on or before five years at six per cent optional payment wire answer immediately.

Carl Anderson."

Telegram from Carlsen to Anderson:

> "Loup City, Neb.
> . June 22, 1918.

Carl Anderson,
S 581, Ft. Collins, Colo.

Cannot accept offer made but for immediate closing will take thirty-five hundred down balance as indicated pay nineteen eighteen water assessment and retain all rent from · the land this year deed would have to be subject to present lease and I really feel land is offered too cheap.

> C. C. Carlsen."

Telegram from Anderson to Carlsen:

> "Fort Collins, Colo.
> June 24, 1918.

C. C. Carlsen,
Loup City, Neb.

· Do not understand price made in telegram wire exact terms and price.

> Carl Anderson."

Letter from Carlsen to Anderson:

> "Loup City, Neb.
> June 22, 1918.

Carl Anderson,
Ft. Collins, Colo.
Dear Sir:

Your telegram advising me that you have an offer of $7250 for my farm near Wellington is just received and I have wired you that I will sell it for $7500, $3500 down, balance in a mortgage to me for $4000, due on or before five years, at six per cent interest from date, I to pay the water assessment for 1918, and retain all rents for this year from the farm, and land to be sold subject to possession under the lease now outstanding.

As stated in my telegram I really feel that this is selling the farm for less than it is worth, but because it is a long way from me and I cannot look after it personally, will let it go for the amount stated, if sold right away. I would not want this deal to drag along and if you cannot close with

your prospective purchaser immediately call it off, and the price will not be a cent less than we asked, to-wit, $8000.00, and I really think I shall feel better if you write me that you did not sell it than if you advise that the place has been sold.

Thanking you for your immediate advices concerning this, I am

Yours very truly,

C. C. Carlsen."

Letter from Carlsen to Anderson:

"Loup City, Neb.
June 24, 1918.

Carl Anderson,
Ft. Collins, Colo.
Dear Sir:

I have just received your telegram stating that you did not fully understand mine of Saturday, and I am writing you today that I will take $7500 for immediate closing, and my letter of the 22nd will be received about the time you will get this telegram.

As stated in my letter of that date, I am not at all anxious to sell the land, but because of the long distance it is off, will give you a chance to sell it to your buyer, if he wants it, and unless you can close this immediately, do not make the offer at all, as my price is and will be $8000, as before stated.

Yours very truly,

C. C. Carlsen."

Telegram from Carlsen to Anderson:

"Loup City, Neb.
June 24, 1918.

Carl Anderson,
S. 581, Ft. Collins, Colo.

My offer for immediate acceptance is seventy five hundred dollars thirty five hundred cash now mortgage for five years for balance at six per cent interest from date possession to be given under lease but rentals for nineteen eighteen reserved by me and I will pay the nineteen

eighteen water taxes you will have letter tomorrow explaining this.

C. C. Carlsen."

Telegram, from Carlsen to Anderson:

"Loup City, Neb.
June 26, 1918.

Carl Anderson,
Ft. Collins, Colo.
Call off all negotiations have sold land.

C. C. Carlsen."

Telegram from Anderson to Carlsen:

"Fort Collins, Colo.
June 26, 1918.

C. C. Carlsen,
Loup City, Neb.
Sold farm early yesterday morning. Sent contracts for your signature and deposited five hundred dollars earnest money to your credit. Too late now to stop deal as per your telegram. Send abstract deed and contract at once.

Carl Anderson."

It was beyond the power of Carlsen at the time of trial to specifically perform, and the court gave judgment in damages in the sum of $500, which judgment is now before us for review.

It is contended that Anderson the agent was simply an agent or broker to find a purchaser and had no authority to execute a written contract of sale binding the land owner, and the case of *W. T. Craft Realty Co. v. Livernash,* 27 Colo. App. 1, and many other authorities are cited to sustain this contention.

The doctrine of that case cannot be denied, but the facts of this case do not bring it within the rule. Anderson did not attempt to execute a contract purporting to bind Carlsen, the principal. The proposed sale was not upon the terms nor at all under the arrangement by which the property was listed with Anderson for sale. It was a contract growing out of a specific offer by a particular person and culminating in a definite proposition by Carlsen himself,

made to such person through telegrams and letters to Anderson.

The written contract signed by the Hays, mailed by Anderson to Carlsen on the 25th day of June was in compliance with the terms of the contract proposed by Carlsen in all respects. Among other things, it was there recited:

"And the said party of the second part hereby agrees to pay to the said party of the first part as the purchase price of said land, subject to said excepted liens and encumbrances, the sum of Seventy-five Hundred and No/100 Dollars in the manner following, to-wit: Five Hundred and No/100 Dollars cash in hand paid the receipt whereof is hereby acknowledged, and the balance as follows: Three Thousand & No/100 Dollars when papers are accepted and the balance on or before five years from date, with interest payable upon the deferred payments at the rate of 6 per cent per annum from date until paid, payable annually."

This contract was dated and mailed to Carlsen on June 25th. On the afternoon of the following day the latter sent his telegram calling off the negotiations.

The record discloses that during that day he met and made a sale of the premises to another party, represented by an agent, also from Fort Collins, for practically the same consideration.

Carlsen testified that he would have completed the deal with plaintiffs except for the sale made on the 26th to the other party.

The offer by Carlsen was to sell to "your buyer," necessarily alluding to the offer referred to in Anderson's original telegram, and not to any other person. This is made plain from the letter of June 24th wherein Carlsen said "If he wants it, and unless you can close the deal immediately, do not make the offer at all, as my price is and will be $8000, as before stated."

It is urged that the Hays did not pay the $3500 in cash as proposed by Carlsen, but on the contrary deposited only $500. They were not required to deposit the $500 at the

time it was done, and that deposit was but an evidence of good faith.

The rule of reason and custom necessarily enter into such agreements. The proposition by Carlsen provided for the execution of a mortgage to secure the deferred payments, and this could not occur until title vested in the Hays, or the execution and delivery of the written agreement signed and forwarded by them to Carlsen which provided for the payment of the full agreed cash sum upon his signing and acceptance.

Both custom and reason demanded that Carlsen should sign and return the agreement if it contained the proposed terms, before he was entitled to the cash sum and the proposed notes and mortgage.

The parties were dealing at long distance, which necessarily required the use of the mails. This required a reasonable time which the parties must have contemplated. The acceptance was within the period of one day and therefore within a reasonable time. Neither custom nor reason requires minute details in proposals and acceptance such as constitute the contract here considered. For instance, Carlsen's agreement to sell in this case implied that he could convey a proper title.

Common sense and common honesty demand the enforcement of the contract.

It is clear from Carlsen's testimony that he would have signed and abided by the agreement except for the intervening sale. There is no dispute but that the Hays signed and forwarded an acceptance of Carlsen's proposition in good faith the day after it was made and one day before Carlsen attempted to withdraw it. It therefore constituted such a contract as may be specially enforced.

Judgment affirmed.

MR. JUSTICE DENISON and MR. JUSTICE TELLER concur.