## No. 19,438.

GUY A. MINSHALL, ET AL. *v.* LEON M. CASE, ET AL.
(364 P. [2d] 868)

Decided September 18, 1961.

Mr. FRANK A. BRUNO, Mr. STANLEY H. JOHNSON, for plaintiffs in error.

Messrs. ROEPNACK, McCURDY, ORAHOOD AND MALOY, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THIS action involves a controversy arising out of a contract for the purchase and sale of real estate. Plaintiffs in error will be referred to as the sellers, defendants or as Minshalls. We will refer to defendants in error as the purchasers, plaintiffs or Cases.

On December 21, 1956, the said parties entered into a contract, in major part on the familiar printed form, under the terms of which Cases agreed to purchase described real estate (residence property) in Jefferson county, and Minshalls agreed to convey the property to the purchasers, " * * * in fee simple by good and sufficient warranty deed, free and clear from all liens and incumbrances except general taxes for 1956, payable in 1957, and all subsequent taxes, and deliver title insurance therefor so showing."

The total purchase price was $13,500.00, of which $1500.00 was paid upon execution of the contract. The provision of the contract governing the unpaid balance was as follows:

" * * * the balance in monthly installments of $100.00 or more at the option of Parties of the the Second part, including interest at the rate of 6% per annum, and including 1/12 of estimated taxes for the current year on the first day of February, 1957 and on the first day of each subsequent month. Purchasers hereby referred to

as parties of the second part further agree to apply for and secure at their expense the best financing available on said property on or before January 1, 1958 and pay first Parties out in cash. In event new financing will not pay First Parties in full, First Parties agree to carry balance as Collateral loan or second mortgage. * * * "

In addition to the usual provisions concerning insurance and payment of taxes, the contract contained the following agreement pertinent to the questions we are required to determine. The purchasers were:

" * * * until the termination hereof [to] be entitled to possession of said property, but in case of failure of the parties of the second part to make any one or more of said payments, or perform any of the covenants agreed to be made and performed by the parties of the second part, this agreement may be terminated at the election of the parties of the first part, upon giving to the parties of the second part 30 days' notice of intention so to do, which notice may be served as provided by law for service of notice to quit, and in case of such election the parties of the second part shall forfeit all payments made, and such payments shall be retained by the parties of the first part in full satisfaction and liquidation of all damages the parties of the first part may have sustained.

"IT IS MUTUALLY AGREED, That time shall be of the essence of this agreement, * * * "

The provisions of the contract were to extend to and be binding upon the "heirs, * * * successors and assigns of the respective parties."

Purchasers, who were plaintiffs in the trial court, alleged that they had complied with all the terms of the contract, and that on the 4th day of January 1958, defendants served upon them a notice as follows:

"TO: Leon M. Case and Eleanor V. Case

"You are hereby notified that Guy A. Minshall and John W. Minshall, as sellers under that certain agreement for sale and purchase of property dated December 21, 1956, wherein you are the purchasers, do hereby

terminate all of your right, title and interest in and to the following described real estate situate in the County of Jefferson, State of Colorado, to-wit:

"Lot 24, Block 2, Cheryl Crest (Part One), Commonly known as 6350 Quay Street, Arvada, Colorado, by reason of your failure to keep and perform the covenants set forth as follows: 'Purchasers hereby referred to as parties of the second part further agree to apply for and secure at their expense the best financing available on said property on or before January 1, 1958, and pay first parties out in cash,' and your failure further to invoke the following clause contained in said Agreement: 'In the event new financing will not pay first parties in full, first parties agree to carry balance as collateral loan or second mortgage.'

"Said termination shall be effective thirty days from the date of service of this notice upon you.

"You are accordingly notified to quit said premises and surrender possession thereof on or before thirty days from the date of the service of this notice upon you; you are to quit possession and surrender the property in question in good condition, ordinary wear and tear excepted.

"Dated at Denver, Colorado, this 3rd day of January, 1958."

Purchasers further alleged that prior to 30 days from the service of said notice, on January 30, 1958, they arranged for a loan with Mortgage Investment Company, Denver, Colorado, and offered to pay Minshalls in full in accordance with the terms of their contract in exchange for a deed from the sellers. The notice was as follows:

"Gentlemen:

"Leon M. Case and Eleanor V. Case hereby notify you that on Thursday, the 30th day of January, 1958, at the hour of 12:30 afternoon, at Mortgage Investment Company, 1711 California Street, Denver, Colorado, Leon M. Case and Eleanor V. Case will make full payment to you of the moneys which you have coming from them under

and by virtue of that contract dated December 21, 1956, wherein you are parties of the first part, and they are parties of the second part, in exchange for your Warranty Deed to them as provided in said contract.

"Dated this 28th day of January, 1958."

The purchasers alleged that the sellers failed and refused to execute and deliver their deed conveying the aforedescribed property, and refused to receive full payment in accordance with the terms of their contract, and thereby breached their agreement and damaged the purchasers. It was further asserted that on the 30th day of January 1958 the reasonable value of the property in question was $13,900.00; that the amount owing to Minshalls was $11,697.16; and that by reason of the breach of contract by them the purchasers were damaged in the sum of $2,202.84 for which amount they prayed judgment with interest from January 30, 1958, and for costs.

Minshalls by answer admitted making the contract, admitted service of the Notice of Termination as alleged by Cases and admitted that they had applied for a loan from Mortgage Investment Company. They denied all other allegations in the complaint. By way of affirmative defenses they alleged that Cases are not the real parties in interest; that they waived any rights they may have had in the subject matter of the action; and alleged an estoppel and forfeiture of purchasers' rights in the contract.

By way of counterclaim the Minshalls seek to quiet title to the premises involved. Trial was had to the court and the evidence shows that subsequent to signing the contract the purchasers moved into and took possession of the property, and that during all of 1957 monthly payments were made by them substantially as called for by the contract. It is undisputed that purchasers were unable to procure financing to pay defendants in cash for the balance due under the contract. There is no showing that other or partial financing was ever attempted by purchasers, nor that any request was ever made of Min-

shalls to accept a second mortgage in part payment of the amount remaining unpaid. At all times there was a first deed of trust upon the property to secure the payment of $10,000.00, placed upon the property by Minshalls, and which would have to be released before or at the time the property was refinanced as contemplated by the contract.

By November 1957, due to unemployment of Leon Case, and other family matters, he returned to Michigan leaving his wife and family in the home which they were attempting to purchase. They listed the property for sale with Allred Realty Co., which fact was known to the sellers who made no objection.

The evidence is undisputed that the $100.00 payment due January 1, 1958, was tendered to the Minshalls on January 2, 1958, but it was refused with the statement that sellers were ending the contract. On January 4th the notice was served upon the purchasers, as hereinabove set forth. In the meantime the agent with whom plaintiffs had listed the property found purchasers who were able to and did procure proper financing to handle the purchase of the property for the sum of $13,750.00 which would more than pay Minshalls the amount due under the contract, out of which the first deed of trust would be released. Minshalls were notified of the time and place of completing the proposed sale, however, they refused to appear at the closing and did not tender a deed, having announced that they wanted possession of the property. The failure of the Minshalls to appear at the scheduled closing for the sale of the property, or to cooperate in the consummation thereof, was the cause of plaintiffs' failure to sell the property. Had the Minshalls extended cooperation all sums due them would have been paid on January 30, 1958.

At the close of the trial the court entered findings and judgment in favor of plaintiffs. On the question of damages the court found the following:

"Now the measure of damages is the problem to be

dealt with: Here, gentlemen, is the way the Court computed the damages. There was a contract introduced in this case whereby the plaintiffs could sell the property for $13,750. So far as the Court is concerned, this represented a bargain and sale, and that the defendants' failure to go through with it provides a measure for the loss of the plaintiffs.

"The Court does not reckon the damages the same as either counsel. There was a contract for $13,500. $1,500 was paid, leaving a balance of $12,000. The plaintiffs paid $100 per month. From that $100 per month must be deducted $23.14 for taxes, a certain amount each month for interest, and the balance the principal. The Court has worked it out and has its figures here and the balance at the end of the eleventh payment would be $11,833.01.

"There has been evidence in this case that there was a real estate commission that would have been paid. The normal commission is six per cent. The Court has subtracted the six per cent commission, which is $825, and comes out with $12,925. The Court then subtracts $11,833.01 from $12,925, which leaves $1,091.99.

"Then the Court considers the matter of rental. $130 a month seems like a fair rental. This would be fair rental if the lessor paid the upkeep, maintained the property and the taxes. Accordingly, it seems proper to the Court that of this $130, reasonable rental, which has been the only figure presented to the Court, the amount of the payment, or $100, could properly be deducted. So the Court assesses a fair rental of $30 a month, or $360.

"Therefore, the judgment shall be in favor of the plaintiffs and against the defendants in the amount of $731.99, together with interest thereon from and after the 30th day of January, 1958, plus costs."

Minshalls seek reversal of the judgment, claiming that the trial court erred in not finding that the plaintiffs had breached their contract and had forfeited all rights in and to the property in question. Plaintiffs by way of

cross error maintain that the trial court erred in the award of damages, and ask that the cause be remanded with directions to apply a proper measure of damages in fixing the amount of the judgment.

Actually there was little or no dispute in the evidence on the material elements of the case, and we deem it sufficient to support the findings of the trial court on the issue of liability. The contract in question was made on a printed form supplied by a well known firm engaged in the business of printing and supplying legal forms to the public. This form is clear and understandable and has been tested by time and usage in this state; however, by the typewritten matter inserted therein it became an indefinite hodgepodge of conjecture and uncertainty concerning the manner, as well as the time, of payment and how future financing was to be worked out. The provision that the purchaser would secure the best financing available on the property on or before January 1, 1958, and that the sellers would if necessary carry back a second mortgage to complete the payment for the premises sold, leaves much to be desired.

What is meant by "best financing available" is anybody's guess. If the sellers were to be called upon to carry back part of the purchase price after this financing was procured, the maximum amount to be so assumed, the payments to be made and the time and conditions for payment, were not set forth. It would be impossible for the purchasers to place a loan on the property without the cooperation of the sellers in securing a release of the existing deed of trust. Under the circumstances shown the contention of defendants that purchasers were obligated to make a tender at the address of one of the sellers, occupied as an office and home, is altogether unreasonable and untenable. No person refinancing this property would be so naive as to advance the funds necessary to complete the transaction in the hope that someone would see to it that the first encumbrance then on the property would be released. Had the loan con-

templated by the parties become unnecessary by the plaintiffs suddenly coming into possession of sufficient money to pay cash for the property, even then it would be wise and proper to complete the transaction in the office of some responsible party who would see that proper exchanges of releases and deeds were made to protect the interests of all persons involved.

■ With reference to the claimed termination of the contract, the instrument itself provides for the method of termination in the event of default by the purchasers. It clearly provides that the contract can be terminated at the election of the sellers upon the giving of 30 days notice of their intention so to do. It could not be terminated instanter as of any time until that 30 days' notice of intention to terminate was given. If, as defendants maintain, the notice given by them was merely a notice to quit and deliver over possession, then the notice meant nothing in that it was inconsistent with a specific condition of that contract. The most favorable construction which can be given to the "notice" insofar as defendants are concerned, is that it was a notice to terminate within 30 days, and during that period the rights of plaintiffs could not be nullified by unilateral action of the sellers.

■ Defendants stress the "time is of the essence" clause of the contract. Such a clause inures to the benefit of both parties to a contract. If the clause is construed as a rigid requirement of the contract, then Cases were entitled to the 30 days notice before termination could be brought about at the election of the Minshalls.

■ With reference to the damages awarded to Cases we hold that the trial court erred in the assessment thereof. The trial court deducted the sum of $825.00 representing a real estate commission which the purchasers might have been compelled to pay if the Minshalls had cooperated with the Cases in their effort to sell the property. There is no evidence whatever in the record concerning a real estate commission, and had one been pay-

able it is difficult to see how it would operate in favor of Minshalls. They may or may not have prevented a real estate broker from earning a commission, but this does not entitle them to a reduction in the amount of their liability to the Cases.

The trial court also. erred in deducting from the amount of damages sustained by Cases what it considered a reasonable rental for the premises while occupied by them. The contract gives to the Cases the full right to possession during the life of the contract. The Minshalls are not entitled to interest on the unpaid balance during the year or more of the life of the contract, nor to rental value of the property. The proper measure of damages is the value of the property at the time of the breach by Minshalls less whatever was owing by Cases to Minshalls. This value was established by the bargain and sale contract which plaintiffs had entered into with third parties, viz. $13,750. The undisputed balance due Minshalls was $11,833.01; the difference is $1,916.99, for which sum Cases are entitled to judgment.

The findings and judgment on the issue of the liability of Minshalls is affirmed; in other respects it is reversed and the cause remanded with directions to enter judgment for the plaintiffs consistent with the views herein expressed.

Mr. Chief Justice Hall and Mr. Justice McWilliams concur.