## No. 26756

**Alfred P. Atchison and Ida Mae Atchison v. The City of Englewood, a municipal corporation, and The Martin Marietta Corporation, a Maryland corporation**

(568 P.2d 13)

Decided July 11, 1977. Opinion modified and as modified rehearing denied September 6, 1977.

Perry & Perry, William O. Perry, Ralph A. Cole, Thomas C. Singer, for plaintiffs-appellants.

Bernard V. Berardini; Dawson, Nagel, Sherman & Howard, Raymond J. Turner; Criswell, Patterson & Ballantine, John A. Criswell, for defendants-appellees.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.*

---

*The HONORABLE VASCO SEAVY, JR., District Judge, sat pursuant to assignment by the Chief Justice under Article VI, Section 5(3) of the constitution of Colorado.

This case has been before this court on two previous occasions[1] and before the Court of Appeals once.[2] The action was initiated by the Atchisons' claim that preemptive rights granted to them by the City of Englewood (hereinafter called the City) were violated. The Atchisons' complaint in the present action sought reformation of the preemptive rights agreement; specific performance, rescission, or damages; and other relief. The trial court reformed the preemptive rights agreement to eliminate the portion of that agreement which violated the rule against perpetuities. However, the trial court refused to grant any additional relief. We affirm the trial court's judgment insofar as it reforms the agreement but reverse that portion of its judgment denying the Atchisons additional relief.

On January 3, 1949, pursuant to a plan to develop its water supply, the City purchased from the Atchisons a ranch with appurtenant water rights. As part of the consideration for the sale, the Atchisons received preemptive rights to buy back or lease the ranch from the City on terms equivalent to those under which the City might offer to sell or lease it to a third party. Before selling or leasing the ranch to a third party, the City was required to make the Atchisons a written sixty day offer to sell or lease on the same terms.

The preemptive rights agreement entered incident to the sale to the City on January 3, 1949, provided, *inter alia*:

"1. The *City hereby gives* and grants unto the *Atchisons* the *exclusive* and prior *right at* the *option of* the *Atchisons to repurchase or* to *lease* the lands described in said Warranty Deed of even date herewith to which reference is hereby made for description of said lands; together with any water rights appurtenant to said lands at the time of such sale or leasing *at* the *same price* and upon the same *terms and conditions upon which* the *City is* willing to sell or lease said real estate and any water rights then appurtenant thereto *to any third person*; and the *City shall not sell or convey or contract to sell or convey or lease* said lands or the water rights that may then be appurtenant thereto *to any third person unless* and until the *City, for* a period of *sixty days, shall first offer in writing to sell or lease* such lands with the then appurtenant water rights, if any, *to* the *Atchisons at* the *same price and* upon the same *terms* and conditions as in the case of such other sale or contract of sale or lease of such property to any third person. . . ." (Emphasis added.)

---

[1]*Atchison v. Englewood*, 170 Colo. 295, 463 P.2d 297 (1969) (extension of the preemptive right to the Atchisons' heirs and assigns violates the rule against perpetuities); *Atchison v. Englewood*, 180 Colo. 407, 506 P.2d 140 (1973) (subsequent litigation was not barred by the doctrine of *res judicata*).

[2]*Atchison v. Englewood*, 30 Colo. App. 207, 492 P.2d 885 (1971).

The Atchisons caused the preemptive rights agreement containing the above paragraph to be recorded by the Arapahoe County Clerk and Recorder on January 25, 1949.

After sale of the ranch and water rights to the City, the Atchisons remained in possession of the ranch pursuant to the January 3, 1949, agreement until March 1, 1950, at which time they leased the ranch from the City for a five-year term. Prior to expiration of that five-year term, however, the City claimed that the Atchisons had breached this lease and purported to cancel it by serving a Notice of Termination of Lease on the Atchisons on September 25, 1951. Among other things, this notice stated that thirty days after service of the notice, the Atchisons would have "no right, title, claim or interest in and to the premises. . . ."

The Atchisons denied that they had breached the lease, but having previously made arrangements to acquire a ranch near Colorado Springs, they did not contest the matter, but vacated their prior home and moved.

During the period from March 1, 1952 until May 7, 1956, the City leased the ranch to two different lessees. The notice required by the preemptive rights agreement was not served on the Atchisons prior to either of these leases.

On May 7, 1956, a twenty-five year lease dated March 1, 1956 was executed between the City and the defendant Martin Marietta Corporation (Martin). This lease granted Martin an option, exercisable on or after March 1, 1961, according to a specified price schedule, to purchase the land without the water rights. Again the notice to the Atchisons required by the preemptive rights agreement was not given.

Over ten years later, on November 11, 1966, Martin notified the City that it would exercise its option to purchase the land. Although in 1956 and 1967, Martin received from its attorneys title opinions which informed it of the cloud on the title created by the Atchisons' preemptive rights, no attempt was ever made by Martin or by the City to give notice to the Atchisons or to obtain from them a waiver, consent, or release.

In November, 1966, the Atchisons learned, through newspaper publicity, of Martin's option and the impending sale to Martin. On December 12, 1966, the Atchisons' attorneys demanded that the City offer to sell the land to them as required by the recorded preemptive rights agreement. Notwithstanding this demand, the City, on November 8, 1967, conveyed the property to Martin, reserving the water rights. Shortly after that conveyance, a portion of the ranch was condemned by the United States Government as part of the Chatfield Dam project.

## I. REFORMATION

The trial court reformed the January 3, 1949 agreement by deleting paragraph three of that agreement on grounds of mutual mistake of the parties. The deleted provision stated:

"3. The rights of the Atchisons under this agreement shall be deemed not in tenancy in common but in joint tenancy in them and in the survivor of them, their assigns, and the heirs, and assigns of such survivor."[3]

The lawyer who drafted the preemptive rights agreement testified that his responsibility had been merely to draft an agreement previously worked out by the parties and that he had followed in this instance his usual practice during that time period of inserting this standard provision in all real estate contracts. Further he testified that he doubted that this paragraph's meaning or effect had been discussed with anybody. The Atchisons testified that there had never been any discussion or agreement to the effect that the preemptive rights provision would run to their heirs.

The trial court found as a fact that the parties never discussed extending the Atchisons' preemptive rights to their heirs and assigns. In its "Conclusions of Law," however, the trial court inferred from its findings of fact that the parties intended to extend the rights to the Atchisons' heirs and assigns and that they mistakenly believed that such a provision would be enforceable. We decline to follow the trial court's conclusion of law in this regard. The findings of fact and the record demonstrate that the parties intended to create personal preemptive rights exercisable only by Mr. and Mrs. Atchison during their joint lives, and by the survivor of them during his or her life.

Reformation is generally permitted where, as here, the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. *Segelke v. Kilmer*, 145 Colo. 538, 360 P.2d 423 (1961) (evidence did not meet this test); *Hamilton v. Shelton*, 74 Colo. 384, 222 P. 350 (1924). Reformation is also appropriate where the variance between the instrument and the true agreement of the parties, hence the mutual mistake of fact, is caused by the draftsman. *Gullion v. Plymale*, 168 Colo. 245, 450 P.2d 650 (1969); *Fenimore v. Stauder*, 34 Colo. App. 309, 527 P.2d 943 (1974). Here the evidence was not only clear and unequivocal but uncontradicted. Contrary to Martin's contention that reformation was granted merely to achieve legal enforceability, the evidence demonstrates that the instrument, before reformation, did not reflect the true agreement of the parties.

Even if we were to hold, as Martin argues, that the parties' mistake was one of law, and not of fact, reformation would nevertheless be appropriate because this mistake concerns the private rights of the parties involved. A "'mistake as to particular private rights may be treated as a mistake of fact. . . .'" *Ryan v. Vickers*, 158 Colo. 274, 280, 406 P.2d 794, 797 (1965), *cert. denied*, 383 U.S. 944, 86 S.Ct. 1201, 16 L.Ed.2d

---

[3]This provision has previously been held to violate the rule against perpetuities. *Atchison v. Englewood*, 170 Colo. 295, 463 P.2d 297 (1969).

208 (1966) (mistake as to priority of lien on property).

■ The trial court did not err in reforming the contract between the Atchisons and the City.

## II. PROPRIETY OF ADDITIONAL RELIEF

A. *Construction of the Agreement.*

The trial court held that the City's lease back to the Atchisons, entered into shortly after their conveyance to the City, entirely satisfied and discharged the City's obligations under the preemptive rights agreement. We disagree. The January 3, 1949 preemptive rights agreement prohibited the City from selling, contracting to sell, or leasing the premises to a third party without first extending an offer to the Atchisons on the same terms. The appellees (the City and Martin) contend that having once leased the ranch to the Atchisons, the City had no obligation to give them notice before selling or contracting to sell the property to a third party. They contend that the word "or" in this context means that the City must respect the preemptive rights agreement *either* before leasing, before contracting to sell, *or* before selling, but not before each of these events. We do not agree.

■ One who is prohibited from three courses of conduct must refrain from all three of them. He is not free to choose to refrain from one of the three forbidden courses of conduct and thereby free himself from the prohibition regarding the other two.

■ A similar argument was made by an insurance company in *Van Zanten v. National Cas. Co.*, 333 Mich. 28, 52 N.W.2d 581 (1952). There, it was held that a provision requiring the insurer to pay benefits for "loss of life, limbs, sight, *or* time" (emphasis added) did not restrict the insured's recovery to loss of a leg *or* loss of time, but not both. In some usages, the word "or" creates a multiple rather than an alternative obligation.[4] Where necessary in interpreting an instrument, "or" may be construed to mean "and." *Smith v. United States National Bank of Denver,* 120 Colo. 167, 207 P.2d 1194 (1949) (interpretation of a will).

The Atchisons' preemptive rights to purchase would be illusory if the City could free itself from them merely by offering the Atchisons a short-term lease, perhaps on terms so unreasonable that the City could be sure the Atchisons would refuse. If such an alternative were sufficient to satisfy the City's obligation, the City, having once offered the Atchisons a lease, could then sell the property to a third party without first offering *to sell* it to the Atchisons for the same price and on the same terms and conditions.

---

[4]The appellees' reliance on *Denver Plastics, Inc. v. Snyder*, 160 Colo. 232, 416 P.2d 370 (1966) for the proposition that "or" is used here to mean "in the alternative" is misplaced. That case did not involve, as does this case, the use of the word "or" in the context of a prohibition.

The prohibitory language in the agreement clearly establishes that the parties intended that the Atchisons be granted two separate rights. In addition to the right of first refusal to *lease*, the Atchisons were entitled to a right of first refusal to *purchase*.[5]

B. *Violation of the Agreement.*

■ It is undisputed that neither the City nor Martin gave the Atchisons notice either: (a) before the City issued to Martin its option to buy, or (b) prior to the actual sale. In our view, issuance of the option to Martin did not diminish the Atchisons' rights since Martin took its interest subject to the Atchisons' prior, recorded interest. *See Wheeler v. Standard Oil Co.*, 263 N.Y. 34, 188 N.E. 148 (1933). Therefore, the Atchisons' preemptive rights were in full force and effect when the property was sold to Martin. In these circumstances, sale to a third party without notice and an offer to the holder of preemptive rights constitutes a breach of a preemptive rights agreement. *Abdallah v. Abdallah*, 359 F.2d 170 (3rd Cir. 1966). This sale to Martin violated the letter and spirit of the City's agreement that the Atchisons would have an opportunity to repurchase on the same terms and conditions under which the City was willing to sell to a third party.

The appellees have advanced several arguments to the effect that the preemptive rights agreement was not in force when the property was sold. We find none of these arguments persuasive. First, the appellees contend that the previous lease to the Atchisons discharged the City's obligations. It is unnecessary for us to reach the issue whether the 1950 lease to the Atchisons satisfied the preemptive right to lease. Certainly the preemptive right to *purchase* was not discharged because the City never offered to sell the premises to the Atchisons.[6]

■ Second, the appellees contend that because the Notice of Termination of Lease which the City sent to the Atchisons in 1951 stated that the Atchisons would have no further rights in the property, this notice eliminated any preemptive rights the Atchisons held at the time they received the notice. We hold that the City's unilateral assertion that the Atchisons' rights were terminated was wholly ineffective to deprive the Atchisons of their preemptive rights under the contract. A modification or amendment of a contract must be accomplished by mutual agreement, not unilateral fiat. *Western Air Lines v. Hollenbeck*, 124 Colo. 130, 235 P.2d 792 (1951); *Columbian Nat'l Life Ins. Co. v. McClain*, 115 Colo. 458, 174 P.2d 348 (1946).

---

[5]Because we have resolved this issue in favor of the plaintiffs, it is unnecessary for us to reach their further contention that the trial court erred in permitting parole evidence on the interpretation of the preemptive rights agreement.

[6]*See* the discussion at Part II.A., *supra*.

■ Third, the appellees contend that, had the Atchisons been given the required notice in 1956, they would not then have exercised their option to lease the land, and therefore, it is inappropriate to grant them relief now. In effect we are asked to assume that the Atchisons would have waived their rights. Unless the holder of a preemptive right is given notice and an opportunity to exercise his right, he is under no duty to act. *Gochman v. Draper*, 389 S.W.2d 571 (Tex. Civ. App. 1965), *rev'd* on other grounds, 400 S.W.2d 545 (1966). What the Atchisons would have done had they received notice is mere speculation. The evidence elicited does not support the appellees' contention that the Atchisons would not have exercised their preemptive right had they been informed that a third party was being given an option to *buy* as well as a lease. At trial, the Atchisons were never asked the crucial question whether they would have opted to lease the land in 1956 if they had been told that Martin was being offered a lease with an option to purchase.

C. *Statute of Limitations.*

Appellee Martin contends that all of the Atchisons' alternative equitable claims, including claims for reformation and specific performance, for rescission, and for damages in lieu of specific performance, are barred by the one-year statute of limitations governing restrictions on property. C.R.S. 1963, 118-8-4.[7] The Atchisons argue that the eighteen-year statute of limitations, pertaining "to actions to enforce or establish any right or interest of or to real property," is applicable to their equitable claims. Section 38-41-101, C.R.S. 1973.

During November, 1966, the Atchisons learned through the local newspapers that the City was in the process of selling the property to Martin. In March, 1967, less than five months after learning about the proposed sale, the Atchisons commenced a declaratory judgment action to establish the validity of their preemptive rights.

■ It is unnecessary for us to decide this issue since neither statute of limitations ran to bar the action. The City failed to give the Atchisons notice, as required by the preemptive rights agreement, prior to granting Martin the option to buy in 1956. Hence Martin took its rights subject to the recorded preemptive rights agreement, and the Atchisons' preemptive rights were in full force and effect at the time of the 1966 sale.[8] At no time did

---

[7]This section provided:
"*One-year limitation.* No action shall be commenced or maintained to recover possession of real property or to enforce the terms of any restriction concerning real property or to compel the removal of any building or improvement on land because of the violation of any of the terms of any restriction unless said action is commenced within one year from the date of the violation for which the action is sought to be brought or maintained."
[8]*See* discussion in Part II.B., *supra*.

the City give notice to the Atchisons nor seek from them a waiver, consent or release. The City's failure to give the Atchisons notice and an opportunity to purchase, pursuant to the preemptive rights agreement, constituted a breach of that agreement,[9] and therefore, no statute of limitation could have commenced running until the Atchisons had notice of the breach.

Martin further contends that the declaratory judgment action was ineffective to toll the statute of limitations on the Atchisons' equitable claims. In the declaratory judgment action, the Atchisons sought a declaration that they had valid preemptive rights. This action was sufficient to preserve other remedies arising out of those preemptive rights. As we said in the second *Atchison* case,[10] addressing a *res judicata* argument,

"Plaintiff, through his counsel, can be convinced that a contract is valid and, in a declaratory judgment action, seek a declaration of validity. It seems to us a bit incongruous to require that, when he takes this action, he must also plead all sorts of other remedies in order to protect himself in the event that he loses as to the validity of the contract." 180 Colo. at 413, 414, 506 P.2d at 143.

This reasoning applies in the present statute of limitations context just as it did in the *res judicata* context. We conclude that the plaintiffs' claims do not violate the statute of limitations.

D. *Equitable Defenses.*

▮ Appellees Martin and the City argue that the Atchisons are barred from exercising their preemptive rights by the equitable doctrines of laches, estoppel, and waiver. Essentially, this argument boils down to the claim that the Atchisons should have read newspaper accounts of the option the City had granted to Martin in 1956 and should have acted then on what they should have read.

Yet, the notice contemplated by the Atchisons' prior recorded preemptive rights contract was a more direct, definite and certain notice than might or might not have been afforded by a news story, even if read. The bald fact is that the notice required was not given either before or after the City granted Martin its option. It would have been simple and inexpensive to give the Atchisons that notice. There is no satisfactory explanation why it was not given. Moreover, Martin did not record its lease and option to buy in 1956, but waited more than ten years to do so. Nor was there any evidence that the Atchisons had actual notice, prior to 1966, of the Martin option. The record does not support a finding of laches, estoppel, or waiver on the part of the Atchisons.

---

[9] *Id.*

[10] *Atchison v. Englewood*, 180 Colo. 407, 506 P.2d 140 (1973).

The Atchisons had no duty to act until they received the required sixty-day written notice.[11] *Botkin v. Pyle,* 91 Colo. 221, 14 P.2d 187 (1932) (no duty to volunteer information respecting a recorded interest). Laches and estoppel are inapplicable to one who has a recorded interest and hence no further duty to take action. *Michels v. Clemens,* 140 Colo. 82, 342 P.2d 693 (1959) (laches); *Botkin v. Pyle, supra* (estoppel). There can be no waiver of a right not known to exist. This action was commenced within five months after the Atchisons discovered the existence of the option and the election of Martin to purchase. That brief delay to consult counsel, decide on a course of action and prepare pleadings cannot be considered so unreasonable a time as to justify an inference of waiver.

E. *Bona Fide Purchaser.*

Martin and the City entered into the lease and option contract on May 7, 1956. Martin had not checked the public records prior to entering into the contract and at that time was unaware of the Atchisons' preemptive rights.

In June, 1956, Martin received from its attorneys a title opinion discussing the Atchisons' prior recorded interest. There was testimony that this discovery of the preemptive rights caused anxiety and "many sleepless nights." Yet no action was taken by Martin or its attorneys to obtain from the Atchisons a waiver, consent, or release. Martin and the City merely plunged forward, without regard to the Atchisons.

On February 21, 1967, prior to the sale of the ranch to Martin, a new title opinion was drafted which recognized that the Atchisons' preemptive rights rendered the title unmarketable. That opinion also stated that it would be necessary to obtain the Atchisons' ratification of the lease and option or to obtain a decree quieting title in the City. Neither the City nor Martin took any action to clear this cloud from the title, and after having received this plain warning that the title was defective, Martin proceeded to pay for and to accept title to the ranch.

Martin claims that it is a bona fide purchaser for value and without notice, and therefore, took title free from the Atchisons' claims. We disagree.

Martin does not claim that its alleged bona fide purchaser status arose prior to its constructive and actual notice of the Atchisons' preemptive rights. Rather it relies on the fact that a portion of the preemptive rights agreement was later declared to be void. Essentially, Martin claims that a void, recorded agreement is incapable of giving notice.

The preemptive rights agreement, even though partially defective prior to reformation, was adequate to put Martin on inquiry notice that

---

[11]*See* Part II.B. of this opinion.

the Atchisons claimed rights in the ranch. In *Shannon v. Timm*, 22 Colo. 167, 43 P. 1021 (1896), this court stated that even if a recorded easement were defective, it would serve as notice to a third party because, "[t]he defendant well knew, from the plaintiff's recorded deed, that an attempt, at least, had been made to create the easement. . . ." 22 Colo. at 172, 43 P. at 1023.

In the present case, Martin well knew that the City and the Atchisons had either created or attempted to create valid preemptive rights in the Atchisons. Martin also had reason to know that where an instrument does not reflect the true agreement of the parties, courts will reform the instrument.[12]

The evidence demonstrated that Martin and its attorneys made a calculated decision not to seek to clear the title by asking the Atchisons for a consent or release, but rather to "let sleeping dogs lie." It was hoped "that maybe the Atchisons had forgotten their rights." The appellees conceded that "the Martin Company took a calculated risk," and that "they would cross that bridge when they came to it."

In *Bradford v. Carpenter*, 13 Colo. 30, 21 P. 908 (1889), we held that a recorded trust deed, even though it contained a draftsman's error which was later reformed, was sufficient to put one who purchased from the original owner and maker of the trust deed on inquiry notice. Had he made inquiry, the third party purchaser would have discovered that the trust deed had been foreclosed.

Here inquiry would have revealed that the entire perpetuities problem arose from a drafting error. It would have disclosed that the parties never had intended that the Atchisons' personal preemptive rights be passed on to their heirs and therefore, there was no factual basis for the contention that the preemptive rights agreement violated the rule against perpetuities. Martin took its interest subject to the Atchisons' preemptive rights. *See, Wheeler v. Standard Oil Co., supra.*

F. *Appropriate Remedy.*

Of the approximately 2,500 acres of land which the Atchisons sold to the City, approximately 2,428 were sold by the City to Martin in violation of the Atchisons' preemptive right to buy. Martin paid $427,905.86 for this acreage. Approximately 1,034 acres of land conveyed to Martin was subsequently condemned by the United States of America.

 Where a right of first refusal is ignored and property held subject to it is sold to a third party without first giving the holder of the preemptive right notice and an opportunity to buy, the holder of the preemptive right is entitled to relief. *Barling v. Horn*, 296 S.W.2d 94 (Mo. 1956); *Hill v. Zuckerman*, 138 Mont. 230, 355 P.2d 521 (1960),

---

[12]*See* Part I. of this opinion.

*cert. denied*, 365 U.S. 813, 81 S.Ct. 695, 5 L.Ed.2d 693 (1960); *Lowell v. First Church of Christ, Scientist*, 101 N.H. 363, 143 A.2d 671 (1958). In cases of the type just described, specific performance may be an appropriate remedy. *Moreno v. Blinn*, 81 Cal. App.2d 852, 185 P.2d 332 (1947); *Harper v. Runner*, 85 Neb. 343, 123 N.W. 313 (1909); Annot., *Option to Purchase at Price Offered to Optionor by Third Person*, 136 A.L.R. 138, 147 (1942); *see also Stanton v. Union Oil Co. of California*, 111 Colo. 414, 142 P.2d 285 (1943) and *Strachan v. Drake*, 61 Colo. 444, 158 P. 310 (1916). Specific performance of a contract for the sale of land is generally granted even though the injury resulting from nonperformance is compensable in damages. *White v. Greenamyre*, 77 Colo. 33, 234 P. 164 (1925).

In view of these authorities specific performance would be an appropriate remedy in this case were it not for the fact that intervening circumstances have rendered it impracticable. Since a very substantial portion of the property has been condemned, we hold that damages in lieu of specific performance are recoverable. *Prosser v. Schmidt*, 118 Colo. 502, 197 P.2d 318 (1948); *McCart v. Johnston*, 79 Colo. 397, 246 P. 259 (1926); *Carlsen v. Hay*, 69 Colo. 485, 195 P. 103 (1921); *Mullen v. McKim*, 22 Colo. 468, 45 P. 416 (1896).

Where damages are awarded for breach of an option to purchase, whether the option price is fixed or dependent on the price offered by a third party, the measure of damages is the difference between the market value at the time of breach and the option price. *Baker v. Ellis*, 244 Ill. App. 330 (1927); *Kritz v. Moon*, 88 Ind. App. 5, 163 N.E. 112 (1928); *Perle v. National Fertilizer Co.*, 224 App. Div. 70, 229 N.Y.S. 339 (1928). *See also Minshall v. Case*, 148 Colo. 12, 364 P.2d 868 (1961).

Here, the contract was repudiated by the City when it sold the property to Martin on November 8, 1967.[13] Because we have held that Martin took the property subject to the Atchisons' rights, the defendants are liable to the Atchisons for the difference between the market value of the land on November 8, 1967, and the amount that Martin paid for the property, together with interest as provided by law.

## III. CONCLUSION

The Atchisons have raised numerous additional issues. Many suggest alternative approaches to analysis of the case. We have considered the remaining contentions carefully and find no error.

Accordingly, we affirm the trial court's reformation of the preemptive rights agreement, reverse on liability, and remand the cause to the district

---

[13]*See* Part II.B. of this opinion, *supra*.

court for a new trial on damages only, consistent with this opinion.
MR. JUSTICE LEE does not participate.